# CRIMINAL CASES.

## Richmond.

### STANLEY v. COMMONWEALTH.

#### December. 3, 1908.

1. CRIMINAL LAW—*Writ of Error--Verdict of Conviction—Conflicting Evidence.*—A verdict of conviction of crime cannot be set aside by this court as contrary to the evidence where the evidence is conflicting on material points.

2. CRIMINAL LAW—*Views—Object—Discretion of Trial Court.*—The purpose of a view is not to supply evidence, but to enable the jury to apprehend it; and whether a view shall be granted or refused lies largely in the discretion of the trial court whose judgment on the question will not be reversed unless plainly wrong.

Error to a judgment of the Circuit Court of Franklin county on an indictment for murder.

*Affirmed.*

The opinion states the case.

*Dillard & Lee*, for the plaintiff in error.

*Robert Catlett, Assistant to the Attorney General*, for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, Arthur Stanley, was found guilty

by the jury of murder in the second degree, and, in accordance with the verdict, was sentenced to confinement in the State penitentiary for the term of six years.

He admits the homicide, but insists that the killing was done in self-defense.

Regarded as upon a demurrer to the evidence, the case is substantially as follows: At the time the homicide was committed, the deceased, Jackson Foster, was living at the house of one Sarah Sink, between whom and himself improper relations existed. On the night of January 17, 1907, the prisoner in company with Sam Stanley and Sam Young went to the home of Sarah Sink and purchased from her a pint of whiskey. After the parties, including Foster and the woman, had taken several drinks together, Sam Stanley and Young, as partners, engaged Foster and his paramour in a game of cards, at which game the former were losers. About eleven o'clock the three men were invited to spend the night, the arrangement being that Sam Stanley and Young should occupy an upstairs room, and Arthur Stanley and Foster the room on the lower floor in which they had spent the evening. Shortly after the two men, accompanied by the woman, who went to prepare a place for them to sleep, had gone upstairs, they heard loud talking—quarreling—in the lower room, and Arthur Stanley called out to his companions, telling them that he did not intend to spend the night at that house. Thereupon, they immediately came downstairs, preceded by Sarah Sink, who entered the room in which they had left Stanley and Foster, Sam Stanley and Young remaining in the hall. The door was half open, and Foster, with his hand against the side of the mantel-piece, was in the act of rising from his chair. He started rapidly toward the door, and in an angry manner.

The witness, Sarah Sink, continuing her testimony, said: "He was drinking heavily, and I knew how he was when he was drinking and aimed to close the door so that he could not

get out and get into any fuss. Then a pistol fired and Foster whirled around and fell on his face right before the fire."

Witness did not see who fired the shot, nor whence it was fired; she did not see the prisoner in the room, or backed behind the door; and saw no knife in Foster's hand and heard no threats; nor did she see him do anything to indicate a purpose to hurt anyone. Witness was shown a knife, which she identified as her property, which Foster had taken from her sewing machine drawer about two weeks before he was killed. The blade of the knife was two and a half inches long; and it was found the morning after the homicide lying half opened on the floor near the head of the deceased.

On the night of the killing, the prisoner was heard to say: "A certain fellow had to be killed here to-night;" and shortly after the homicide he remarked: "I killed him, G— d— him (meaning Foster), and I aimed to do it."

To the contrary of this version of the tragedy, the two companions of the prisoner (one of whom was jointly indicted with him) testified, that when they reached the door of the lower room it was half open, and they saw Foster advancing on Stanley with a knife in his hand upraised in a threatening manner. The prisoner, while retreating toward the door, exclaimed: "Don't crowd me with that knife, Jack Foster." That at that moment Sarah Sink partly closed the door, which caused Stanley to miss the opening and placed him behind the door. Foster continued to advance and the prisoner, thereupon, fired the fatal shot.

It is idle to attempt to maintain that there is no conflict in the testimony of these witnesses. The evidence presents two utterly opposing theories with regard to the transaction, founded upon conflicting testimony of eye-witnesses. It is impossible that both accounts can be true; and the triers of fact, the jury, have seen fit to accept as true the testimony on behalf of the Commonwealth; and the trial court, in this

state of the evidence, upon familiar principles, properly declined to disturb the verdict.

After all the evidence for the defense had been introduced, the prisoner moved the court to have the jury view the premises; whereupon, the court stated that it would not grant a view unless the jury desired it, and turning to the jury inquired if they thought a view would aid them in understanding the evidence and in arriving at a proper verdict. But the jurors indicated that they did not wish to view the premises, and the motion was overruled.

Of the correctness of that ruling we entertain no doubt. The purpose of a view is not to supply evidence, but to enable the jury to apprehend it. Granting or refusing a view is a matter necessarily largely in the discretion of the trial court, and an appellate tribunal will not undertake to control such discretion, unless it plainly appears that it was erroneously exercised.

"This court cannot say that the circuit court erred in overruling the motion, unless it appears from the record that a view was necessary to a just decision." *B. & O. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 447, 471.

In the present instance, a diagram representing a plan of the dwelling in which the homicide occurred was produced, and clearly explained. It was a simple structure, and the jury could not have failed to comprehend the situation.

The remaining assignments of error were not pressed in the oral argument, and being without merit it is not worth while to discuss them.

Judgment affirmed.

*Affirmed.*