𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

CITY OF NORFOLK V. ANTHONY.

September 9, 1915.

1. MUNICIPAL CORPORATIONS—*Market-House—Care of Premises.*— It is the duty of a city operating a market-house for profit to use the same care that is required of a private owner with respect to invitees upon his premises, that is to use due and reasonable care to see that the premises are safe for the purposes of the visit of those invited thereon.

2. MUNICIPAL CORPORATIONS — *Streets — Obstructions — Conflicting Evidence—Province of Jury.*—It is peculiarly the province of the jury, where the facts are disputed as to the nature, character, and size of obstructions in a street or highway, to say whether or not the obstruction or defect complained of is of such a character as to render the municipality liable for damages sustained by a person injured thereby.

3. NEGLIGENCE—*When a Question of Law.*—Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men, upon the proof submitted, may honestly differ as to the negligence charged, the question is not one of law but of fact, to be determined by the jury under proper instructions from the court.

4. NEGLIGENCE—*Conflicting Evidence—Question for Jury—Personal Injury—Proximate Cause.*—Where the evidence is conflicting as to the negligence of a defendant in causing an injury to the plaintiff, it is for the jury to decide under the evidence whether or not the defendant has been guilty of the negligence alleged, and, if guilty, whether such negligence was the proximate and efficient cause of the injuries of which the plaintiff complains.

5. APPEAL AND ERROR—*Verdict Contrary to Evidence.*—While this court has the right to pass upon the evidence in a case when it has to be considered as upon a demurrer thereto, it will not reverse the judgment of the trial court and grant a new trial because the verdict is contrary to the evidence or without evidence to support it, and not in a doubtful case merely because the court, if on the jury, would have given a different verdict.

6. VIEWS—*Purpose.*—The purpose of a view by the jury is not to supply evidence but to enable the jury to comprehend the evidence adduced before it, and to aid them in understanding it and arriving at a proper verdict.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Geo. Pilcher,* for the plaintiff in error.

*S. M. Brandt,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

On the 14th day of January, 1913, the defendant in error (plaintiff in the court below) entered the city market, which was operated by the plaintiff in error (defendant below), for the purpose of making certain purchases therein, and upon leaving the market, passing through the western door at the southern end of the market building to the street, her foot or heel came in contact with an obstruction in the doorway, or her foot slipped on the concrete walk to the door, causing her to fall and to sustain thereby a broken hip. She thereupon instituted this action against the city to recover damages for the injury, and upon the trial of the cause the jury rendered a verdict in her favor and awarded her damages to the amount of $5,000, which verdict the court refused to set aside and rendered judgment for the plaintiff thereon, to which judgment this writ of error was allowed the defendant city.

During the progress of the trial there was but one exception to the rulings of the court, which is to its action

overruling the motion of the defendant to set aside the verdict of the jury and order a new trial upon the ground that the verdict was contrary to law and the evidence. Therefore, the sole question presented to this court for consideration is whether or not the trial court erred in its refusal to set aside the jury's verdict and grant the defendant a new trial.

Viewing the evidence certified in the record as upon a demurrer thereto by the defendant, the facts are as follows: The defendant maintains under its charter a certain market house within the corporate limits of the city, and leases, for a consideration, stalls, or stands, in said market to divers persons. The building has a concrete floor, and at the southern end thereof, facing on Tazewell street, there are two doors, separated by a post. Along the line where the floor and doorway meet, the floor has sunken and broken away from the western doorway to such an extent that the floor, as variously estimated by the witnesses, is from about an inch and five-eighths to two and a half inches lower than the doorway, at the eastern side of the western door, which is at the center post between the western and the eastern doors, and five-eighths of an inch at the western side of the western door; in other words, there is a break in the line of the doorway, extending from the western side of the door to the eastern side thereof, causing the doorway to be higher than the floor five-eighths of an inch at the western side of the door, and from an inch and five-eighths to two and a half inches at the eastern side of the door—that is, the break in the line of the doorway begins at a depth of five-eighths of an inch at the western side of the western door and increases in depth so that the doorway is higher than the floor by from one and five eighths of an inch to two and one-half inches at the eastern side of the doorway, where it connects with the post that separates the two doorways and upon which the

two doors are hung, so that during market hours the two doors are swung back within the market building and hooked together. Both the floor of the market building and the doorway are above the street level, and hence from the doorway there is an incline down to the street level.

On the date mentioned, at 11 o'clock a. m., the plaintiff, as she had done many times before, entered said market building and while in the building stopped at the stand of one Breslauer, which was immediately within the building near the western end of the western door, and in leaving the building through the western doorway, her foot or heel came in contact with the ridge in the doorway or she slipped from some cause and fell heavily on her side and suffered an impacted fracture of the hip.

Her declaration in this action contains two counts, the gravamen of the first being, that the defendant had carelessly and negligently permitted the floor of its market building immediately near the western door, on the southern side of the building, to become in a dangerous, defective and unsafe condition, which condition had prevailed at this point for some two to three years with the knowledge of the defendant's authorities. The second count avers that the floor of said market building, upon which the plaintiff was required to walk, on the day and year that she sustained the injuries for which she sues, was in a dangerous, dilapidated and unsafe condition, of which condition the defendant had due notice for a period of three weeks prior to the injury of the plaintiff, in that the southern end of said market building contained refuse matter that was allowed to accumulate upon the concrete floor of the building, rendering the same slippery to walk on, by reason whereof the plaintiff, while walking in and upon the floor of said building, as she had the right to do, fell, etc., by reason whereof she sustained the injuries she complains of.

After the introduction of the evidence in the case the plaintiff asked for no instructions to the jury, nor did she object to the six instructions asked by the defendant, all of which the court gave. The sixth of the instructions given is as follows:

"The court instructs the jury that a municipal corporation owning, controlling and letting out stalls in its market building, is liable for the management and use thereof to the same extent and in the same manner as a private person; the city is not an insurer of the safety of the premises, but is charged only with the duty of keeping the premises in a reasonably safe condition for the use of those who, while exercising reasonable care for their own safety, have a right to use the premises; the court further instructs the jury that a municipal corporation is not an insurer against accidents in its market building. It is sufficient if the floors and exits of its market building are in a reasonably safe condition. It is not expected and is not required that a city should keep the floors and exits of its market building at a perfectly level and even surface, nor absolutely free from refuse matter. Slight obstructions, or the accumulation of refuse matter for a brief period of time, may not be preventable, and the only duty imposed upon the defendant is that it use ordinary care to prevent the same; and, if the jury believe from the evidence that the said defendant, the city of Norfolk, used ordinary care in the maintenance and use of its market house, to keep the same in a reasonably safe condition, then they shall find for the defendant."

Other of the instructions given for the defendant defined the duty imposed by law upon a person using the market building of a city, and told the jury that if they believed from the evidence that the plaintiff knew, or should have known, of the defect in the doorway of the defendant's market building, of which she complains in her decla-

ration, and failed, at the time the accident befell her, to use care commensurate with the known unsafe and dangerous condition, they should find for the defendant. The jury were also instructed that if they believed from the evidence that the plaintiff, by the exercise of ordinary care and diligence, should have seen and avoided the defects complained of in her declaration, and failed to do so, then she was guilty of contributory negligence and could not recover; that the burden of proving contributory negligence on the part of the plaintiff was on the defendant, unless such contributory negligence be disclosed from the plaintiff's evidence, or might be fairly inferred therefrom, or from the other evidence in the case.

It is conceded that these instructions are to be taken as the law of this case, and they submitted it, upon the evidence, to the jury fairly and as favorably to the theory of the defense as could have been reasonably asked, leaving it for the jury to determine whether or not the defendant had been guilty of the negligence charged in plaintiff's declaration, and if the jury found that the defendant was guilty of the negligence charged and that such negligence was the proximate cause of the plaintiff's injuries, then they were to ascertain and determine, from the evidence, whether or not the plaintiff was guilty of such contributory negligence as barred her of a recovery of damages for her injuries in this action.

The first contention of the defendant here is that the judgment of the trial court upon the verdict of the jury should be reversed because the existence of the alleged defect in the doorway of its market house, by reason of which plaintiff sustained the injury for which she sues, was not, as a matter of law, negligence; and that, as a matter of law, the defendant was not negligent in allowing the defective condition in the doorway of its market house, as alleged in the declaration and testified to by the witnesses in the

case, to exist. It is conceded also that there are no decisions in this State directly in point and a number are cited in which injuries were received as the result of a defective sidewalk, or, due to obstructions in the respective cases, upon a public highway. These cases do not apply to the facts in the case at bar, for the reason that the rule with respect to public buildings, where operated for profit and in the exercise of which operation the city is performing a ministerial duty and the duty devolves upon the city to use the same care that is required of a private owner with respect to invitees upon his premises, which duty is to use due and reasonable care to see that the premises are safe for the purposes of the visit of those invited thereon. *Richmond & Manchester Ry.* v. *Moore, Admr.*, 94 Va. 493, 27 S. E. 70, 37 L. R. A. 258; *Bennett* v. *L. & N. R. Co.*, 102 U. S. 577, 26 L. Ed. 235.

If, however, the same rule obtained in this case that applies to cases in which the obstruction was on a public street or highway, under well settled principles of law, it is peculiarly the province of the jury, where the facts are disputed, as to the nature, size and character of the obstruction, to say whether or not the obstruction or defect complained of is of such a character as to render the municipality liable for damages sustained by a person injured thereby. *City of Richmond* v. *Gentry*, 111 Va. 160, 68 S. E. 274; *Same* v. *Lambert*, 111 Va. 174, 68 S. E. 276, 28 L. R. A. (N. S.) 380.

It is furthermore well settled by the Supreme Court of the United States and this court, by practically an unbroken line of decisions, that negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men, from the proofs submitted, may honestly differ, as to the negligence charged, the question is not one of law, but one of fact to be de-

termined by the jury under proper instructions from the
court.    Among the cases adverted to are, *McDermott* v.
*Severe,* 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162;
*Richmond & Danville R. R.* v. *Powers,* 149 U. S. 43, 13 Sup.
Ct. 748, 37 L. Ed. 642; *Northern Pac. R. R.* v. *Everett,* 152
U. S. 107, 14 Sup. Ct. 479, 38 L. Ed. 373; *Winchester* v.
*Carroll,* 99 Va. 742, 40 S. E. 37; *Cardwell* v. *N. & W. Ry.
Co.,* 114 Va. 512, 77 S. E. 612; *Higgins* v. *Southern Ry. Co.,*
116 Va. 890, 83 S. E. 380.

In the instant case, the plaintiff, testifying in her own
behalf, does not undertake to state the nature, size or
character of the defect in the floor or doorway in the market
house which she alleges was the cause of her injuries, but
in substance relates just how the accident happened to her
as follows:    That she went to Breslauer's stand in the
market on the day of the accident, and on leaving, just
as she got to the door her left heel caught, and she tried
to catch herself and her right foot slipped out on some
rubbish which was lying there, and threw her on her left
side and broke her hip.    "That is all I can say.    I was
picked up by two men in the market."    She then relates
the character and extent of the injury resulting from her
fall, the length of time she was kept in bed by reason
of her injuries, the costs and expenses incurred in en-
deavoring to get healed and cured of her injuries, and that
she was lame, disabled and would continue so during her
life.    She further stated that she had frequently visited
the market, but could not recall that she had often before
gone out of the market through the door where she fell,
and had no reason on this occasion for being particularly
careful or to look down where she was walking, never
having noticed the defect in the floor or doorway which
caused her to fall.    She was asked on cross-examination:
"Do you know what it (her left foot) caught in?"    Ans.
"No.    I could not tell you that, but something was there

that caught it, because I had on ordinary shoes, flat shoes, you know." Q. "Did you slip on a cabbage leaf or refuse matter?" Ans. "Yes, I think it was something. My right foot slipped on it." Other witnesses testify as to the defect in the floor or doorway which formed the obstruction over which the plaintiff fell; that this obstruction had continued for two years prior to the injury to the plaintiff; that this particular obstruction was located at a point where it was very dark in broad daylight by reason of the manner in which the door in the market swung back, the door when open forming a passageway between the stand on the western side of the market building and doors in the center of the building at the entrance of the market when open and hooked together. W. F. Jordan, testifying for the plaintiff, stated his familiarity with the market house, having occupied a stand there for nearly three years, and describes the door on the western side at the southern end of the market house and the conditions there in January, 1913, when the accident to plaintiff happened, as follows: "It is awful dark. There is a ridge there about one and a half or two inches high. After they put the two wooden doors up there you can't see it (the ridge) unless you look mighty carefully for it." He further stated that this ridge had been there ever since he had occupied a stand in the market and that the place was dangerous to walk upon; that the concrete floor had settled down, leaving the sill still there, causing a ridge which was about an inch and a half or two inches high, making the place dangerous to walk upon and that one would be apt to stumble upon it if he did not look for it. On cross-examination the witness stated that he himself had fallen over this same obstruction. The testimony further shows that the market was kept in a filthy condition; that refuse was allowed to accumulate so that the sill of the doorway and the sidewalk leading from the sill to the curb of the street was full of dirt and refuse,

99

the witness Jordan testifying that he did not think that the market house had been swept out decently since he had occupied a stand therein, and in effect he stated that while those who had stands in the market swept around them, the city officials did not sweep out the market, as they should have done, and that he did not think it had been swept out the morning of the accident to the plaintiff. Upon the question of whether or not the market had been cleaned out the morning of this accident, as well as to the nature, character and size of the obstruction in the doorway, caused by the floor sinking from the sill and where plaintiff fell and received her injuries, the testimony given by the witnesses for the defendant is sharply contradictory of that given by the plaintiff's witnesses; therefore, it was for the jury to decide, under the proof adduced, whether or not the defendant had been guilty of negligence in allowing the conditions in the doorway to exist and if guilty of negligence in this respect, such negligence was the proximate and efficient cause of the injuries to plaintiff of which she complains. There is no evidence in the case that would have warranted the jury in finding the plaintiff guilty of contributory negligence.

It has been repeatedly ruled by this court, that while it has the right to pass upon the evidence in a case where it has to be considered as upon a demurrer thereto, it will not reverse the judgment of the trial court and grant a new trial, because the verdict is contrary to the evidence or without evidence to support it, and not in a doubtful case, merely because the court, if on the jury, would have given a different verdict. *Arminius Chem. Co.* v. *Landrum*, 113, Va. 7. 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913-D, 1075; *Cardwell* v. *N. & W. Ry. Co. supra*, and authorities there cited.

Upon the careful examination that has been given the evidence in this case, in the light of the authorities cited,

this court is unable to say that the verdict of the jury is plainly against the evidence, or without evidence to support it; and this conclusion has been reached without having attached any importance whatever to the fact discussed in the briefs of counsel for the respective parties that the jury, upon the motion of the plaintiff, were permitted to view the premises where the injury complained of in this action was sustained—that is, we have attached no additional weight to the verdict of the jury than if they had not had a view of the premises. The purpose of the view was not to supply evidence, but to enable the jury to comprehend the evidence adduced, to aid them in understanding it and arriving at a proper verdict. *Stanley's Case,* 109 Va. 796, 63 S. E. 10; *Litton's Case,* 101 Va. 833, 44 S. E. 923. Presumably the jury attached no more importance to their view than is contemplated by the law permitting it.

The judgment of the court of law and chancery is affirmed.

*Affirmed.*