# Staunton

EMMET YEARY AND FRANK YEARY, ETC. V. WILLARD HOLBROOK, ETC.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*Hamilton & Heuser* and *Rixey & Rixey*, for the plaintiffs in error.

*F. H. Combs*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Willard Holbrook recovered a verdict and judgment in the sum of $4,000 for personal injuries received when a Chevrolet coupe, driven by him, collided with the defendants' truck loaded with beer, traveling in the opposite direction around a sharp curve on the highway between Haysi and Grundy.

The evidence is in direct conflict, and is sufficient to support a verdict for either party. Under these circumstances, we will consider only such evidence as may be material to decide questions of law raised by exceptions to rulings of the trial court.

The first assignment of error is stated thus: "The court erred in allowing the plaintiff to make the demonstration of the automobile before the jury at the view, and in allowing the witnesses for the plaintiff to testify at the view, and erred in the conduct of the view, all to the prejudice of the defendants."

When the court adjourned at the close of the first day of trial, both parties announced that they had introduced all of their testimony, except defendants reserved the right to call one more witness if he were present on the next day. When court convened on the second day of the trial, counsel for defendants stated that the absent witness was not available. Thereupon the court announced: "Motion having been made by counsel for the plaintiff for a view by the jury of the premises where the accident occurred, the court will grant a view of the premises, but will direct in advance that counsel for both plaintiff and defendant will be permitted to use any witnesses upon the ground where the accident occurred to *point out the positions of the cars, the condition of the road, etc., that have been detailed in evidence;*

*but, the proceedings on the ground will be confined solely to the location of the various positions occupied by the parties and the cars involved in the controversy and no explanations or additional evidence will be taken,* but the jury will be permitted to make any view of the premises that they may desire, and as extensively as they may desire to view it. Any suggestions from counsel on either side?" (Italics supplied.)

Counsel for defendants objected, not to the ordering of the view, but to the announced purpose of the court that it would permit witnesses to point out to the jury the various objects, positions, and things at the scene of the accident that they had mentioned in their testimony. Among other reasons given to support the objection was that defendants, on the previous day when it was announced that the introduction of evidence had been concluded, had excused all of their witnesses.

The court, in overruling the objections, stated "that a view without witnesses to point out the premises and positions would be useless," and that "counsel for either side can call attention to the statement of any witness and the position he said he occupied, and ask the jury to look at it." Whereupon the jury was taken to the scene of the accident, accompanied by the sheriff, the judge, the court reporter, and counsel for the parties.

■ Various expressions found in the early opinions of this court indicate that a jury view is not to supply evidence, but merely to acquaint the jury with the scene, to enable them to comprehend the evidence introduced and to aid them in understanding it. See *Litton* v. *Com.,* 101 Va. 833, 44 S. E. 923; *Stanley* v. *Com.,* 109 Va. 796, 63 S. E. 10; *Cutchin* v. *Roanoke,* 113 Va. 452, 74 S. E. 403; *Norfolk* v. *Anthony,* 117 Va. 777, 86 S. E. 68; *Scott* v. *Doughty,* 124 Va. 358, 97 S. E. 802. Judge Burks, after a review of many previous opinions, speaking for the court in *Lorillard Co.* v. *Clay,* 127 Va. 734, 104 S. E. 384, 387, said: "We do not wish to restrict views to cases where they will aid the jury in applying the testimony adduced on the trial. There

are cases where a view will furnish 'a distinctly additional source of proof, *i. e.,* the thing itself as autoptically observed.' In such case the view should be granted, as it would be 'of substantial aid to the jury in reaching a correct verdict.' "

■ The question decided in *Noell* v. *Commonwealth,* 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345, was that a view by the jury amounted, in fact, to the introduction of evidence and was a part of the trial. It was held that on the trial of one charged with a felony his presence at the view was essential. Judge Kelly, in this opinion, again reviewed the prior cases on the question and quoted with approval the foregoing statement of Judge Burks.

The following excerpt from Judge Ritz' opinion in *State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938, 939, is illuminating and was likewise approved by Judge Kelly:

"The purpose of introducing evidence is to inform the jury of the transaction in regard to which the trial is had, and anything pertinent to that end is proper for the purpose. Frequently in the trial of such cases material objects are introduced before the jury. In homicide cases the garments worn by the deceased are often introduced for the purpose of showing the place at which the wounds were inflicted. Can it be said that this is not evidence? It is stronger and more convincing to the jury than the oral testimony of any witness could possibly be. There can be no difference in the proffer of objects to the jury in the courtroom and such exhibition by taking the jury to view such objects, when they are not susceptible of being brought into court. The reason the jury is taken to view the ground is simply because it is physically impossible to bring it into the courtroom, and it is therefore necessary, in order that the jury may have all of the light obtainable upon the subject to which the inquiry is directed, that it be taken and shown these objects which form a part of the subject of the inquiry. In this case can it be doubted that the actual demonstration made upon the ground to show whether or not certain objects were visible from a certain point was

the strongest sort of evidence that could be introduced upon that question? Likewise, the view of the jury was the very strongest evidence as to the distance between the scene of the tragedy and the place where the witness was standing whose testimony was questioned. A dozen witnesses might testify that they observed this tragedy from a certain point, and the jury would not believe a single one of them, if from the observation made upon the ground the physical conditions were such as to preclude the possibility of the truth of the witnesses' statements."

In 2 Wigmore on Ev. (2d Ed.), 705, the principle is stated thus: "It is wholly incorrect in principle to suppose that an autoptic inspection by the tribunal does not supply it with evidence; for, although that which is received is neither testimonial nor circumstantial evidence, nevertheless it is an even more direct and satisfactory source of proof, whether it be termed 'evidence' or not. The suggestion that, in a view or any other mode of inspection by the jury, they are merely 'enabled better to comprehend the testimony,' and do not consult an additional source of knowledge, is simply not correct in fact."

The record in this case shows that, among others, five witnesses called by plaintiff testified that they either saw the car or truck before the impact, or saw or heard the collision. Two of the witnesses, Mrs. Elsie Owen and her daughter, Opal, were at their home some seventy-five yards from the curve and saw the truck as it passed going toward the curve. Both noticed the speed of the truck and heard it strike plaintiff's car. Jason Raines, another witness for plaintiff, testified that he was on his porch around the curve from Mrs. Owen's house and saw plaintiff's car for some distance as it approached the curve from Grundy and saw the truck coming in sight around the curve from Haysi just a moment before the impact. Two other witnesses, Carson Colley and Fred Mullins, were on a knoll, or hill, just opposite the curve and across Russell Prater Creek and saw both the truck and the car before the impact, and immediately after the impact they ran down the hill, across

a foot bridge and up to the highway. The cross-examination of these witnesses suggested, or intimated, that they might have been so far below the level of the highway that they could see very little of either vehicle. Each of these witnesses gave some estimate of the distance he or she was from the point of impact.

In view of this and other evidence, the width of the hard surface and the shoulders of the highway, the angle of the curve, the topography of the terrain, the points of observation of the witnesses at the moment of the impact, the location of the cars before and immediately thereafter, the distance from the different places of observation to the point of impact of the vehicles, were important objects and things to a comprehensive view by the jury. It cannot be assumed that members of the jury, before the view, were fully cognizant of these matters. It was imperative in this case, as it is in most cases when a view is ordered, that someone be designated to show pertinent objects to the jury in an impartial manner.

For more than two centuries a jury view of objects that are physically impossible to be brought into the courtroom has been a part, or, rather, an incident of a trial by jury. Neither the common law judges of England nor the trial judges in Virginia are required to be present at the view. According to early English practice, before the jury were sworn the first six names on the panel were authorized to attend and to represent the whole body at the view. This practice was fruitful of delay and abuse. Hence Lord Mansfield, by rules of court, made material changes in the practice. See Rules for Views, 1 Burr 252. Later, an act of Parliament authorized the jury to be placed in charge of "showers," who were sworn to lead them to the view. In *Goodtitle* v. *Clark*, 94 Eng. Reprint 1002, it appears that the defendant in a civil action complained that the plaintiff's shower had misbehaved himself in his comment to the jury. "The Court discharged the rule by an opinion that on a view the shower may show marks, boundaries, etc., to enlighten the viewers and may say to them

'these are the places to which, on the trial, we shall adapt the evidence.'" Still later, by act of 6 George IV, chap. 50, sec. 23, a view at the discretion of the trial court was extended to criminal as well as civil cases. In *Reg.* v. *Whalley,* 2 Cox, C. C. 231, the oath administered to the showers was set forth as follows: "You swear you will attend this jury and well and truly point out to them the place in which the offense for which the prisoner T. W. stands charged is alleged to have been committed. You shall not speak to them touching the supposed offense whereof the said T. W. is so charged, only so far as related to describing the place aforesaid."

Generally, the power to order a view in civil as well as in criminal cases is now controlled in a large measure by statute. Abstracts of these statutes are found in 2 Wigmore on Ev., sec. 1163. Most of the statutes are based on the English practice. Sometimes provisions are made for the presence of the judge or, in his discretion, for the appointment of showers.

3 Wigmore on Ev., sec. 1802, under the head of "Hearsay Rule as Applicable to Court Officers," says: "But the pointing out by judicially appointed showers is no violation of the rule. The theory of showers is that they are agents of each party, familiar with the issues of the case, and appointed by the court (or by consent of parties) to identify provisionally beforehand the places to which the testimony will relate. They are sworn to do this properly, and to say nothing more. Thus their position is analogous to that of a witness; their oath is the oath of a witness so far as their functions make them such; and by examination it can be ascertained in court whether they have truly fulfilled it. There is therefore that opportunity of testing by cross-examination which is required by the hearsay rule. The presence at the view of a shower representing each side affords a further opportunity of ascertaining the propriety of each other's doings. The employment of duly appointed showers, therefore, is in no sense an exception to the ordinary rule of evidence; and this has long been recognized."

In Virginia, the usual practice in civil cases is to send the jury, in charge of an officer of the court, to the scene to make the view. If attorneys for both sides are present and one desires that some particular object or distance be noted by the jury, this fact is made known to the officer in charge, in the presence of opposing counsel. Whereupon the officer calls the attention of the jury to the particular matter. If the judge, in the exercise of his discretion, is present, these matters are brought to the attention of the jury by the judge himself. The mere fact that the jury is brought to the particular place is, in effect, a statement that it is the scene of the accident and a request to examine it. Judge Cardozo, in *Snyder* v. *Massachusetts,* 291 U. S. 97, 54 S. Ct. 330, 334, 78 L. Ed. 674, 90 A. L. R. 575, 582, says: "Statements to the jury pointing out the specific objects to be noted have been a traditional accompaniment of a view for about two centuries, if not longer."

If the jurors, or any one of them, listen to a statement (not argument of counsel) of a person made to them about a material matter in the trial of the case when such person is not on the witness stand, the conduct is improper, and Wigmore says it violates the rule against hearsay. And, further, "upon the same principle, the making of statements by a *witness at a view,* or even the pointing out of the places by a witness or other unauthorized person at a view (which amounts to giving testimony) is a violation of the rule. Here, also, the only question can be whether the impropriety is, under the circumstances, sufficient ground for setting aside the verdict." 3 Wigmore on Ev., sec. 1802 (2).

The trial court's ruling that the proceedings at the view would be confined to the location of the various positions occupied by the parties and the vehicles involved in the controversy was clearly right. This ruling was further emphasized by the trial judge's saying that "no explanation or additional evidence will be taken." Its ruling that witnesses for both plaintiff and defendants could be used on the view is erroneous.

The vital question is whether or not the examination of these witnesses on the view constitutes reversible error. The solution of this question depends upon whether the incidents which took place on the view were so prejudicial to defendants as to have deprived them of a fair and impartial trial.

The trial court ruled that it would not only permit counsel to interrogate the witnesses on the view, but that counsel for either side would be permitted to call the attention of the jury to the statement of any witness and the position he said he occupied and to "ask the jury to look at it."

It appears that the sheriff, the jury, and counsel for defendants arrived at the scene before the judge, the attorney for plaintiff, and the court reporter. Mr. Rixey, attorney for defendants, announced to the judge upon his arrival that Mr. Raines, a witness for plaintiff, had been making statements to the jury before the arrival of counsel for plaintiff and the court. Thereupon the jurors were asked, "What information have you gotten before our arrival?" A member of the jury, in the presence of the judge, counsel, court reporter, and the sheriff, said, "Nothing at all, only the boy came down and undertook to show us." The witness Raines said, "They stopped me and said to wait until the court came." The sheriff said, "I told him to stop as soon as I saw him." The witness Raines said, "I didn't think or I wouldn't have said a word. There wasn't anything said. They stopped me." Any discussion of the evidence before the jury at the scene by the witnesses or anyone else is improper, but the uncontradicted evidence by all parties shows conclusively that no information was given or received. Hence defendants have not shown that this incident was prejudicial to them.

The next incident which took place was that the judge directed the plaintiff to take his coupe and place it in the position the witness had said it was at the time of the impact. It then directed that "a man come up here and take the position of the other man, where he says he was, and let the woman show where she was when she saw it, and

Mr. Raines show where he was when he saw it, and if the jury wants to go to the place where he stood and looked at it they can go to that spot." After some objection to thus identifying the different places at the scene, the judge stated to the attorneys that "counsel can send them anywhere they want them to go." All material questions propounded to the witnesses were confined to the location of places mentioned in the testimony and the positions of the vehicles on the highway. No new evidence or explanation of the evidence already received, except that revealed by autoptical observation, was permitted.

The trial judge was present during the entire view and in giving his reasons for overruling defendants' motion for a mistrial, said: "On reaching the place of the accident counsel for the defendants informed the court that there had been some discussion by the witness Raines in the presence of the jury before the court reached the point. Upon investigation, the deputy sheriff who was with the jurors, and two of the jurors, stated to the court that Mr. Raines did come upon the ground with a measuring stick and started to talk, and he was immediately stopped. The judge thereupon cautioned the jurors to consider nothing that occurred prior to the time he had reached the scene, and the jurors gave assurance that nothing had occurred in the way of giving any demonstrations or attempting to give any evidence. As to what occurred on the ground, the court announced before the view of the premises was had that actions on the ground would be confined solely to demonstrations of positions occupied by the various parties, and this was strictly carried out. There was no testimony taken while on the ground, but, as stated before, everything was confined to a few simple demonstrations as to the positions of the parties." We find this summary of what took place on the view substantially in accord with the detailed account made by the court reporter.

It would have been better and more in keeping with the general practice for the court to have placed the jury in charge of some officer familiar with the scene and

to have authorized him to point out the pertinent objects with no witnesses for either side present. However, in this case the judge himself acted as an official "shower" and permitted the witnesses for plaintiff and the attorneys for defendants, in the presence of the judge, to point out to the jury objects and locations mentioned in the testimony previously introduced. If the court is authorized to select an impartial person to point out pertinent objects and things, surely it is not reversible error for the judge himself to perform this duty.

We do not approve of the use of witnesses on a view, but inasmuch as the witnesses did not change their testimony in any material way and it affirmatively appearing that the full opportunity was given defendants to show to the jury any and every object and thing mentioned in the testimony, the judgment will not be reversed.

The second, third, and fourth assignments of error deal with instructions given, amended, and refused. To discuss each of the twelve instructions involved would necessarily be a restatement of well-settled principles applicable to an action to recover damages for personal injuries received in a collision of vehicles on the highway. Hence the discussion will be limited to a few objections which are deemed worthy of consideration.

Defendants objected to the giving of the usual instruction on the measure of damages, not on the ground that the instruction did not correctly state the measure of damages, but on the ground that there was no evidence tending to establish some of the elements. After the verdict, defendants moved to reduce the amount of recovery on the ground that in the bill of particulars plaintiff had named a definite sum for each of the following elements: Loss of earning capacity, mental and physical pain and suffering, and the effect of the injuries upon plaintiff's health; and that the sum of $4,000, the amount of the verdict, exceeded the sum total of these items stated in the bill of particulars.

While it may be possible, in some cases, to state with more or less accuracy the value of the loss of earning

capacity, there is no exact rule by which to measure the other elements. Simply because plaintiff estimated the amount for each element in his bill of particulars does not make that estimate binding upon the jury or the court.

The uncontradicted evidence shows that as a result of the collision the plaintiff's skull was fractured, his left shoulder blade was broken, and he received numerous lacerations on the head and legs. He remained unconscious for twenty-four hours, was totally disabled for ninety days, and at the time of the trial, eight months after the injury, had not regained his health and strength. He was then subject to blind and dizzy spells, which might continue indefinitely. Including compensation for his loss of time and hospital bills, $4,000 is not excessive.

Defendants objected to the giving of the following instruction: "The court instructs the jury that if the defendants rely upon the contributory negligence of the plaintiff as a defense in this case, then the burden is upon the said defendants to prove such contributory negligence by a preponderance of the evidence."

The usual form of expressing the burden of proof on the question of contributory negligence is to conclude the instruction with the statement "unless· such contributory negligence is disclosed by plaintiff's evidence or can be fairly inferred from the circumstances," or some similar statement. The failure to add the qualifying clause or some similar phrase is not error in this case because the record discloses that none of plaintiff's evidence tends to establish contributory negligence, nor could such negligence be inferred from the facts and circumstances testified to by him and his witnesses.

Instruction No. 1, requested by defendants, reads as follows: "The court instructs the jury that simply because the plaintiff was hurt in a collision with the defendants' vehicle, does not entitle the plaintiff to a verdict. This action is based on negligence, and you cannot infer negligence on the part of the defendants' driver from the mere happening of the accident. The presumption is that the defendants'

driver was free from negligence *and this presumption applies at every stage of the case.*

"The burden is on the plaintiff to prove, by the preponderance of the evidence that the defendants' driver was guilty of negligence that caused the accident. If, after hearing all the evidence, you are uncertain as to whether the defendants' driver was guilty of such negligence, and it appears equally as probable that he was not as that he was, you should find for the defendants."

The court amended the instruction by striking out the words in italics, and, as amended, the instruction was given. A presumption of fact is but an inference drawn from other facts and circumstances in the case. In the absence of evidence on a question of negligence the presumption is that the actor is free from negligence. Where there is positive evidence presumption disappears. Before any evidence was introduced in this case, the defendants were presumed, as a matter of law, to be not guilty of any negligence, and in the absence of any evidence on the point this presumption would have been sufficient to have compelled a finding in their favor; but after plaintiff introduced direct and positive evidence all presumptions on the point disappeared. A presumption of the proper performance of duty applies to plaintiff as well as defendants. Such presumptions must be overcome by evidence. One presumption cannot be built upon another. The expression eliminated from the instruction is generally found in instructions on reasonable doubt given in criminal cases, but this emphasis on the presumption has not been and should not be extended to civil cases. The burden is on the Commonwealth in a criminal case to prove the guilt of the accused beyond all reasonable doubt. The burden is on the plaintiff in civil suits or actions to prove his case by a mere preponderance of the evidence. We find no error in the instruction as amended.

There was no evidence offered by either party which tended to show that the defendants, through no fault of

their own, were placed in a position of sudden emergency. Hence there was no error in refusing instruction No. 6.

While the plaintiff, in his bill of particulars, claimed exemplary damages in the sum of $1,000, and made some reference thereto in his opening statement, the instruction on damages confined the consideration of the jury to compensatory damages only. There was no error, therefore, in refusing instructions Nos. 8 and 11, which in effect told the jury that they could not find punitive or exemplary damages or make any assessment for a permanent injury.

The amendments to certain instructions requested by defendants involved the principles of contributory negligence. The instructions, as offered, contained expressions informing the jury that if they believed the plaintiff failed in the performance of his duty (to exercise due care for his own safety) "in any particular," then he was guilty of contributory negligence, and if such failure proximately contributed to the accident "in any degree," they should find for defendants. These instructions were amended by inserting "substantial" after "any," making the instructions read, "If such failure proximately contributed to the accident in any substantial degree," followed by directions to find for defendants.

Contributory negligence is nothing more than the failure of plaintiff to exercise ordinary care for his own safety, which, together with the negligence of another, brings about injury to him. If a plaintiff's failure to exercise due care helps to bring about or cause the injury to himself, he cannot recover from another whose negligence co-operated or concurred with his own neglect to produce the injury.

An instruction containing the same phrase, "in any degree," as set forth in the defendants' instruction offered in this case, was granted in *C. & O. Ry. Co.* v. *Whitlow,* 104 Va. 90, 51 S. E. 182. The instruction in that case seems to have been given by the trial court without an objection. It was in conflict with another instruction given for plain-

tiff over objection of the C. & O. Ry. Co. expounding the doctrine of comparative negligence. This court held that the latter instruction was erroneous, and restated the familiar doctrine, that the court in such cases will not undertake to balance the negligence of the respective parties for the purpose of determining which was most at fault, as the law recognizes no gradation of fault in such cases. See *Richmond Traction Co.* v. *Martin's Adm'r,* 102 Va. 209, 45 S. E. 886.

In this case the instructions amended contained two minimizing phrases; namely, if the jury believed from the evidence that plaintiff failed in his duty "in any particular" and that such failure contributed to the accident "in any degree," they should find for defendants. In *Clinchfield Coal Corp.* v. *Osborne's Adm'r,* 114 Va. 13, 75 S. E. 750, 751, it is stated that: "The language 'slightest degree' is a departure from that heretofore employed and approved by this court, and should not have been used. It was calculated to mislead and to visit upon the person injured all the consequences of the defendant's negligence, although the shortcoming of the plaintiff may have been so trivial as to have really been without appreciable effect. Further, the jury had already been sufficiently instructed as to the plaintiff's contributory negligence, and the instruction in question was properly rejected for that reason." See also, *Shiflett's Adm'x* v. *Virginia Ry. & Power Co.,* 136 Va. 72, 116 S. E. 500.

Justice Gregory, speaking for the court in *Wright* v. *Perry,* 166 Va. 222, 184 S. E. 206, 207, held that the use of the phrase "however slight his (plaintiff's) negligence may have been" was erroneous. He expressly approved the wording of an instruction reading:

"The court instructs the jury that you cannot return a verdict in favor of the plaintiff in this case if you believe from the evidence that he was guilty of any act of negligence that caused, or proximately contributed to the cause of the accident."

This instruction contains a simple, concise statement of the principle, without tending to magnify or minimize the alleged act of contributory negligence of plaintiff.

 Negligence and contributory negligence are not essentially different. The one is the failure of defendant to use ordinary care for the safety of another; the other is the failure of plaintiff to use ordinary care for his own safety. If a combination of the two failures caused, or contributed to, or concurred in producing the injury, neither of the two failures can be made the basis of recovery. In an ordinary tort action, no instruction should contain a statement, that if the jury believes the defendant was negligent in the slightest degree, plaintiff should be entitled to recover. Then why should the jury be instructed that plaintiff's negligence in the slightest degree would bar his recovery? The law imposes the same degree of care in such cases upon both plaintiff and defendant, but if one is more negligent than the other the law will not undertake to balance the negligence of the respective parties for the purpose of determining which was more in fault. *Smith's Adm'r* v. *Norfolk & P. Traction Co.,* 109 Va. 453, 63 S. E. 1005.

 The use of the expression "in any particular," followed by the minimizing phrase "in any degree," is calculated to cause the jury to give undue weight to some trivial act or shortcoming of plaintiff. Webster's New International Dictionary, 2nd Edition, defines "substantial" to be "not seeming or imaginary; not elusive; real; true; important; essential; material." With this word added to the instruction, the jurors, even if they were inclined to scan the use of words as closely as attorneys in the case, could not be misled. The clear, unequivocal meaning of the instruction, as given, is that the negligence of the plaintiff must be a substantial factor in contributing to the injury before such negligence will bar his recovery.

 Since the decision in *C. & O. Ry. Co.* v. *Stock & Sons,* 104 Va. 97, 51 S. E. 161, abolishing the scintilla doctrine, before either party is entitled to an instruction on negligence or contributory negligence, as the case may be,

there must be more than a scintilla of evidence introduced on the subject. The doctrine of contributory negligence on the part of the plaintiff implies negligence on the part of the defendant.

The defendants in this case do not concede any negligence on their part. The case presents two clear-cut theories. Plaintiff's theory is that defendants' truck was traveling at an unreasonable speed on the wrong side of the curve and struck his Chevrolet coupe when it was as far as it could safely travel on the right-hand side of the highway. The defendants' theory, supported by the testimony of the witnesses introduced by them, was that the plaintiff was driving his coupe on the outside of the curve and struck their truck when it was as far on the truck's side of the highway as it could have been driven with reasonable safety. The jury had to accept one or the other of these theories, as there was direct and positive evidence to support each theory. There was little or no evidence tending to show concurring negligence. Either the acts of the driver of defendants' truck were the sole proximate cause of the injury, or the acts of the driver of the coupe were the sole proximate cause. Instructions on contributory negligence, even if incorrect, could not have misled the jury.

We find no reversible error in the record. Hence the judgment of the trial court is affirmed.

*Affirmed.*