Horace M. SIMPSON, Appellant,

v.

**LAMBERT BROTHERS DIVISION—VULCAN MATERIALS COMPANY** and Donald W. South, Appellees.

No. 9992.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 3, 1965.

Decided June 6, 1966.

732

Robert T. Winston, Norton, Va. (Shelby Smoot, Kingsport, Tenn., and Horace M. Simpson, on the brief), for appellant.

William T. Gamble, Kingsport, Tenn., and Andrew P. Miller, Abingdon, Va., for appellees.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge:

Horace M. Simpson was injured when run over by a heavy construction vehicle driven by Donald W. South, an employee of Lambert Brothers Division of Vulcan Materials Company. Simpson sued South and Lambert Brothers Division in the District Court for damages and a jury returned a verdict in favor of the defendants. The District Court denied Simpson's motion to set aside the verdict and grant a new trial. Simpson appeals and asserts that numerous errors were committed during the course of the trial. The defendants, appellees, contend that the District Court should have held as a matter of law that they were not liable to Simpson. For reasons to be stated we think the plaintiff is entitled to a new trial.

At the time he was injured, Simpson was employed by Pope Construction Company as foreman of an asphalt production plant which the company maintained on land leased from Lambert Brothers Division at the latter's quarry in or near the city of Bristol, Virginia.[1] Pope also purchased its needed amounts of crushed limestone, one of the basic ingredients of its product, from Lambert Brothers Division. The limestone was delivered by Lambert Brothers Division to a stockpile area near the asphalt plant. It was upon his return from the delivery of a load of limestone that South ran over and injured Simpson.

The vehicle which South was driving is referred to as a "dumptor." Unlike the more common type of dump truck, the bed in which material is carried is located in front of the driver's compartment rather than behind it. The driver's seat is located approximately over the right rear wheel. As a consequence of this design, the dumptor's driver, while able to peer forward across the top of the bed, has limited vision of objects close to the left front of the vehicle. While the extent of this blind spot is not precisely ascertainable from the record, it is clear from the testimony of South and from photographs in evidence that the driver could not see an individual, standing or walking, if within a fairly close range of the dumptor's left front portion. It was the left front wheel of the dumptor which injured Simpson.

The dumptor can also be operated in reverse and when so operated the driver's vision in the direction of the vehicle's movement is restricted only to the extent of the limit of his ability to turn his head to the rear while at the same time maintaining control of the steering wheel and other driving instruments.

1. Since Bristol, Virginia, lies directly adjacent to the Tennessee state boundary line, it should be stated, in the interest of avoiding confusion as to the applicable state law, that the situs of the asphalt plant, and hence of the accident in question, was in Virginia.

In making and returning from their deliveries of limestone to Pope's stockpile, the vehicles of defendant Lambert were driven between the asphalt plant and a small inspector's shack which was located nearby. On a return trip, the shack lay to the left and the asphalt plant to the right of a vehicle operated in a forward direction. On the occasion of the accident a truck was parked beside the asphalt plant in a position which narrowed the available space through which the dumptor might pass to a width estimated by Simpson as approximately thirty feet. South and the driver of the parked truck estimated this space at approximately twenty feet. The dumptor itself is approximately ten or eleven feet wide. The dumptor was operating in a forward direction at a speed, according to South, of between seven and ten miles per hour.

In the course of his foreman's duties, Simpson made numerous daily trips between the asphalt plant and the inspector's shack. The door of the shack faced the asphalt plant. Just prior to the accident, Simpson had proceeded across the open space to the inspector's shack. According to his testimony, he stepped up into the shack, the floor of which was roughly six inches above ground level, and asked the inspector if the temperature of the asphalt suited him. The inspector gave an affirmative reply and handed Simpson a ticket, requesting that Simpson give it to the driver of the truck which was parked next to the asphalt plant. Simpson testified that he then turned around and stepped out of the shack,[2] whereupon he was struck by the dumptor.

Simpson estimated that his step out of the shack did not carry him more than two feet from its door before the accident occurred. Two witnesses to the accident testified that Simpson took one or perhaps two steps from the door before being hit. A third witness estimated that Simpson was four to five feet away from the door when he was struck. South estimated that there was a clearance of five or six feet between the dumptor and the shack and a clearance of three or four feet between dumptor and the parked truck.

South testified that he did not see Simpson emerge from the shack at the time of the accident. From the facts already stated, it seems probable that South could not have seen Simpson even if he had been looking squarely in the direction of the door of the shack. South could not recall whether he had observed Simpson crossing from the asphalt plant to the shack just prior to the accident.

Simpson testified that he did not see the dumptor before it struck him. At this point it must be noted that, according to the evidence, Simpson had only ten per cent of normal vision in his right eye. He could not recall whether he had looked before stepping out of the shack. He further testified that the work operations of the asphalt plant produced a considerable amount of noise and that ordinarily the sound of passing vehicles could not be heard above the roar. The plant was operating at the time of the accident.

■■ Error entitling plaintiff to a new trial inheres in the District Court's reply to an inquiry from the jury concerning the law of contributory negligence. Before the case was submitted to the jury, the court gave instructions on this subject which appear to be complete and adequate in all essential respects. The jury then retired to consider its verdict but subsequently returned to the courtroom and asked the following question:

"If we believe that the negligence of Mr. Simpson *in any degree* contributed

---

2. Hershell Worley, the driver of the truck which was parked next to the asphalt plant and a witness to the accident, testified that he did not "believe" that Simpson had gone inside the inspector's shack, but had gone to the door, reached for the ticket, and immediately turned around. We are not persuaded that Worley's version, if credited, would substantially affect the question of contributory negligence on the part of Simpson. In any event, it is impossible to determine which version the jury accepted.

to the accident, do we have to find for the defendant?" (Emphasis added.)

The court responded, without more, "Yes, you would if you feel that." Counsel for the plaintiff objected.

It is the established substantive law in Virginia that negligence on the part of a plaintiff does not bar his recovery if it contributes only slightly or trivially to his injury. See Cooke v. Griggs, 183 Va. 851, 856–857, 33 S.E.2d 764, 766 (1945); Yeary v. Holbrook, 171 Va. 266, 198 S.E. 441 (1938); Wright v. Perry, 166 Va. 222, 184 S.E. 206 (1936); Clinchfield Coal Corporation v. Osborne's Adm'r, 114 Va. 13, 75 S.E. 750 (1912).

In Yeary v. Holbrook, supra, the defendant requested an instruction which contained the identical phrase we find objectionable here, stating that negligence on the part of the plaintiff would preclude his recovery if it proximately "contributed to the accident '*in any degree.*'" The trial court amended the instruction by adding the word "substantial" so that the phrase read, "in any substantial degree" and it was given to the jury in the amended form. The Virginia Supreme Court, after criticizing the instruction in the form as requested, approved it as given and stated:

> "* * * The clear, unequivocal meaning of the instruction, as given, is that the negligence of the plaintiff must be a substantial factor in contributing to the injury before such negligence will bar his recovery." (171 Va. at 287, 198 S.E. at 450.)

In Cooke v. Griggs, supra, the court said:

> "In instruction C, requested by the defendants, the court properly eliminated the words 'in any extent', as measuring the quantum of contributory negligence to bar a recovery. Contributory negligence as a defense must be more than merely trivial, it must be a contributing cause of the accident."

The defendants argue that, assuming error in the District Court's reply to the jury's inquiry, the reply must be construed in conjunction with the court's instructions in chief, and, thus viewed, the jury was correctly instructed as to the causal connection which must exist between a plaintiff's negligence and his harm in order to bar his recovery. In attempting to support their argument the defendants emphasize the statement of the trial judge, made outside the hearing of the jury, that he did not believe the jury meant to inquire as to whether negligence which contributed to his harm in a "*de minimis degree*" would bar Simpson's recovery. However, the question posed by the jury strongly indicates that the jury either had not fully understood and comprehended the court's instructions in chief on this point or had forgotten them. Under these circumstances it was incumbent upon the court to reinstruct the jury correctly and understandably upon the matter of contributing cause. Certainly the jurors sought further explanation and guidance in determining a question which had obviously arisen. The court's answer was the last word which the jury carried back to the jury room where deliberations were to be resumed and must be regarded as the only effective instruction on the troublesome point to which the inquiry was directed. In such circumstances the fundamental rule that jury instructions are to be considered and construed as a whole is of more than doubtful application.

■■ The defendants argue that if Simpson was negligent, his negligence was perforce a proximate cause of his injuries. They insist that the evidence reveals that Simpson walked blindly from the inspector's shack into the path of the dumptor, that the sequence between his negligence and his injury was continuous and unbroken by any intervening cause, and that "but for" his negligence he would not have been harmed. Assuming for purposes of this discussion that Simpson was negligent, we might be inclined to agree that his harm would not have occurred without his negligence. Nevertheless, under Virginia law the satisfaction of the "but for" test does not necessarily establish, as a matter of law,

that a plaintiff's careless conduct is a proximate cause of his harm which will preclude a recovery from a negligent party. In Speer v. Kellam, 204 Va. 893, 134 S.E.2d 300 (1964), the plaintiff's decedent was killed when struck by defendant's car. At the time of the accident, the decedent was walking near the right edge of the paved portion of the road with his back to traffic approaching in that lane. Under the applicable law, which required pedestrians to walk on the left side of the road facing traffic approaching from the opposite direction, the decedent's conduct was negligent per se. Defendant was driving "around a curve, on an unlighted highway, at a speed of 35 to 40 miles per hour, on a dark, wet, misty night, with the headlights of his car on low beam." There was evidence also that defendant was under the influence of alcohol and he did not see the decedent until he was only twenty steps away. Clearly, the accident would not have happened "but for" the decedent's negligence in walking on the wrong side of the highway. Nonetheless, the court held that his conduct was not, as a matter of law, a direct and efficient contributing cause of his injuries and that a jury could reasonably conclude that the conduct of the defendant was the sole proximate cause of the accident.

We think that a jury could reasonably take a similar view of the evidence in this case. Here the jury could have believed from the evidence that Simpson had proceeded no more than one step, or a distance of two feet, outside the shack. Ordinarily, one would not expect to encounter a motor vehicle so near any building. South drove the dumptor by the door of the shack in spite of the restriction of his vision to the left front and despite his awareness, admitted at the trial, that people were constantly walking back and forth between the asphalt plant and the inspection shack. There were possible alternative courses of conduct open to South. Even if there had been no other route which he could have taken, there is no evidence to indicate that he could not have sought and awaited the removal of the parked truck so that a wider space for passage would have been available. Moreover, he could have driven the dumptor by the shack in reverse which would have given him greater visibility. In light of these considerations, the jury could justifiably have regarded Simpson's negligence as a remote cause of the accident.

■ In view of the result which we reach, it is unnecessary for us to consider Simpson's other claims of error. We might note our conclusion, however, that his contentions that he was entitled to an instruction on wanton negligence and to an instruction that South was under a duty to keep the dumptor a "safe" distance away from the door of the inspector's shack (as opposed to a duty simply to exercise reasonable care) are clearly without merit.

■■ We are not persuaded by the defendants' argument that, under the Virginia Workmen's Compensation Act, Simpson's exclusive remedy is against his employer, Pope Construction Company. The defendants contend that they were not "other parties" as to Pope within the meaning of Va.Code Ann. § 65–38,[3] and therefore are not liable to Simpson for his injuries. An "other party" would be one who was not engaged in the execution or performance of the work of Pope. Bristow v. Safway Steel Prods., 327 F.2d 608, 610 (4 Cir. 1964). The defendants argue that, in providing limestone for Pope's asphalt production operations on land leased

---

**3.** That statute provides in pertinent part as follows:

"The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any *other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such *other party*." (Emphasis added.)

from Lambert Brothers Division, they were performing part of Pope's "business." They assert that they were participating in an integrated operation for the mutual benefit of Pope and Lambert Brothers Division. However, Lambert was essentially a mere supplier of raw material to Pope, nothing more, and, as such, it was not engaged in Pope's business. See Bristow v. Safway Steel Prods., supra; Garrett v. Tubular Prods., 176 F.Supp. 101 (D.C., 1959).

The judgment entered by the District Court is reversed and the case is remanded for a new trial.

Reversed and remanded.