# Richmond

## FRANK L. DOSS V. THOMAS F. RADER.

March 1, 1948.

Record No. 3284.

Present, All the Justices,

The opinion states the case.

*Curtis Simpson*, for the plaintiff in error.

*Stuart B. Carter*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This writ of error brings under review a verdict and judgment rendered on behalf of Thomas F. Rader against Frank L. Doss in an action for damages for personal injuries sustained in an automobile collision. The collision occurred at the intersection of a primary highway, U. S. Route No. 220, and a secondary highway, Route No. 650, about one and one-half miles south of Fincastle, in Botetourt county. Route No. 220 runs north and south and is a hard-surfaced road, paved to a width of twenty feet, with the usual dirt or gravel shoulder on either side. Route No. 650 runs east and west and intersects Route No. 220 approximately at right angles on the east side thereof, but does not cross it.

The collision occurred about nine a. m. on Sunday, Jan-

uary 14, 1945. It had been raining, the weather was damp and foggy, and the pavement was slippery.

The Rader car was proceeding northwardly along Route No. 220 toward the intersecting road which ran off to its right. The Doss car had been proceeding westwardly along the secondary road No. 650, and had come to a stop partly in the intersection preparatory to making a left turn and proceeding southwardly along the primary road No. 220.

Looking south from the intersection, in the direction from which the Rader car approached, there is a clear view for about 1500 feet along Highway 220 to the crest of a hill. From the crest of this hill, going north, the primary road is downgrade for a distance of about 1200 feet, thence upgrade for a distance of 300 feet to the intersection. From the intersection the upgrade continues for a further distance of about 350 feet to the crest of another hill. In other words, as the Rader car approached the intersection it was proceeding upgrade.

According to the testimony of both drivers, there was some fog in the valley or dip in the primary road south of the intersection.

Since the case must be remanded for a new trial, we will relate only so much of the evidence as is necessary for a discussion of the several questions presented.

Rader testified that he approached the intersection at a speed of approximately thirty-five miles per hour; that his attention was first directed to a truck which had turned off the primary road and was proceeding eastwardly along the secondary road; that when he reached a point about 150 feet to 100 feet, or less, from the intersection, he looked ahead and for the first time saw the Doss car, at a standstill in the intersection, with its front projecting from three to four feet across the eastern edge of the pavement of the primary road, and thus partly blocking his (Rader's) line of travel; that he applied his brakes; that they "grabbed on the slick road;" that he released the brakes, then applied them again, and cut his car sharply to the left in the effort to pass in front of the Doss car; that he was unable to effect

the passage; and that the right side of his car skidded against the left front of the Doss car.

Doss testified that he brought his car to a full stop before reaching the eastern edge of the primary road; that he looked both ways and saw no approaching traffic; that he then proceeded into the intersection and turned his car slightly to the left for the purpose of making a left turn and proceeding southwardly along Highway 220; that when the front of his car had crossed the eastern shoulder of the primary highway and was barely protruding into the eastern edge of the pavement, he saw the Rader car to his left, emerging from a bank of fog which was in the dip or valley of the road; that observing that the Rader car was coming at a rapid rate of speed, which he fixed at from sixty to sixty-five miles per hour, he (Doss) stopped his car in order to allow the Rader car to pass; and that when the brakes were applied to the Rader car it skidded for a distance of approximately eighty-six feet, striking the front of the Doss car and proceeding across the primary road, where it came to a stop partly in a ditch.

The gist of Rader's claim is that Doss was guilty of negligence in that he failed to keep a proper lookout for the Rader car; that he entered the intersection from a secondary into a primary road without observing the approaching car; and that he stopped his car on the highway, in violation of section 86 of the Motor Vehicle Code.[1]

On the other hand, Doss contends that the collision was proximately due to Rader's own negligence in that he was driving at a speed greatly in excess of the permitted rate of thirty-five miles per hour; that he failed to have his car under proper control, especially in view of the hazardous condition of the highway; that he failed to keep a proper lookout for the Doss car, and failed to direct his course to the left so as to avoid the collision.

Hence, Doss says, the trial court erred in not striking the plaintiff's (Rader's) evidence, or in not setting aside the

---

[1] Acts 1932, ch. 342, p. 658, as amended by Acts 1938, ch. 205, p. 331, Acts 1942, ch. 421, p. 674; Michie's Code of 1942, section 2154(133).

jury's verdict, and in not entering a final judgment for him (Doss), the defendant.

In our opinion this assignment is not well taken. Whether under all of the evidence either driver was, or both were, guilty of negligence which proximately caused the collision were questions for the jury under proper instructions. See *Greenleaf* v. *Richards*, 178 Va. 40, 16 S. E. (2d) 374, and cases there cited.

Over the objection of Doss, the trial court admitted the testimony of several witnesses that on October 1, 1946, the day preceding the opening of the trial, tests had been made both with the same automobile which Rader was driving at the time of the collision, and with other cars, driven at various speeds northwardly along the primary road approaching the intersection, in the same direction in which Rader was going, and that these tests showed that the noise of the approaching vehicles, in each instance, was plainly audible to a person standing in the intersection at the point where the Doss car had been stopped just prior to the collision.

From this evidence Rader reasoned that since Doss had testified that he had not heard the noise of the approaching Rader car, he (Doss) was not keeping a proper lookout.

In our opinion the admission of the evidence of these tests was improper and prejudicial. The conditions were not the same. The collision occurred on a damp, foggy day in January, while the tests were made in October, when, the evidence shows, a strong wind was blowing and the atmospheric conditions were quite different. Then, too, nearly two years had elapsed between the date of the collision and the date when the tests were made, and in the meantime the Rader car had been sold and a new engine had been installed therein.

The evidence of noise made by other automobiles used in the tests would throw little, if any, light on the amount of noise made by the Rader car. Indeed, there was no evidence that the Rader car was making any appreciable

noise at the time it approached the intersection just prior to the collision.

Hence, the evidence of these tests was of no probative value on the issues before the jury and should have been excluded. See *Ferguson* v. *Virginia Tractor Co.*, 170 Va. 486, 495, 197 S. E. 438, 442; *Bell* v. *Kenney*, 181 Va. 24, 29, 30, 23 S. E. (2d) 781, 783.

Moreover, the force and effect of this evidence were emphasized by the granting, over the objection of the defendant (Doss), of "Plaintiff's Instruction No. 5" which told the jury that "proper lookout means not only the use of one's eyes but also his ears and other faculties used to warn him of approaching danger." In this connection counsel for Rader argued that it was the duty of Doss, before entering the primary highway from the secondary road, to "stop, look and listen" for the approach of traffic on the primary highway.

It is true that before entering the arterial road Doss was required to stop by the sign which confronted him there. It is also true that we have said that under such circumstances Doss was required to be on the lookout for oncoming traffic before entering the main road. *Otey* v. *Blessing*, 170 Va. 542, 552, 197 S. E. 409, 413; *Garrison* v. *Burns*, 178 Va. 1, 7, 16 S. E. (2d) 306, 308. But this does not mean that he was required, *as a matter of law*, both to "look and listen" before going into the primary road.

The doctrine which requires one to "stop, look and listen" at a railroad crossing connotes a high degree of care which, as we pointed out in *Green* v. *Ruffin*, 141 Va. 628, 638, 125 S. E. 742, 127 S. E. 486, "does not apply with the same strictness in law to pedestrians and automobiles." To the same effect, see *Baker* v. *Close*, 204 N. Y. 92, 97 N. E. 501, 38 L. R. A., N. S., 487.

With respect to each other the drivers of automobiles are required to exercise ordinary care to avoid a collision at an intersection, and to that end each should keep a proper lookout for other vehicles. What is a proper lookout in a given situation, and whether it includes the duty

to listen as well as to look, are for the jury. There is no imperative rule of law requiring one lawfully using the public highways to be constantly looking and listening to ascertain whether another automobile is approaching.

Error is assigned to the action of the trial court in granting "Plaintiff's Instruction No. 4" which reads thus:

"The court instructs the jury that if they believe from a preponderance of the evidence that Doss stopped his automobile in such a manner as to impede or render dangerous the use of U. S. Highway Route 220, and that such alleged action on the part of Doss was the proximate cause of the collision, then you should find for Rader and fix his damages as outlined in Instruction 13, unless you believe the plaintiff guilty of contributory negligence."

This instruction is predicated upon section 86 of the Motor Vehicle Code, as amended (Michie's Code of 1942, section 2154 (133)), which provides that, "No vehicle shall be stopped in such a manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, * * * ."

Clearly this section was not designed to prevent a motorist from stopping momentarily on the highway in an emergency or in order to avoid a collision, as Doss says he did. Stopping momentarily is frequently a necessary incident to travel on the highway. This statute was not intended to require a motorist to refrain from stopping when going ahead would bring his car into collision with another vehicle, or some other object.

As was said in *Peoples* v. *Fulk*, 220 N. C. 635, 18 S. E. (2d) 147, 148, 149, with respect to a similar statute, " 'Park' or 'leave standing' means something more than a mere temporary or momentary stop on the road for a necessary purpose. (Citing cases.) Starting and stopping are as much an essential part of travel on a motor vehicle as is 'motion.' Stopping for different causes, and according to the exigencies of the occasion, is a natural part of the

'travel.' The right to stop when the occasion demands is incident to the right to travel."

In other words, stopping momentarily on the highway to avoid a collision is not a stopping within the meaning and prohibition of the statute.

The instruction told the jury that Doss was guilty of negligence as a matter of law if he "stopped his automobile in such a manner as to impede or render dangerous the use of" the primary highway. It failed to submit for the jury's consideration Doss's testimony that he was compelled to bring his car momentarily to a stop in order to avoid a collision with the rapidly approaching Rader car.

Whether the stopping was occasioned in the manner and under the circumstances claimed by Doss, whether it was necessary to avoid a collision, as Doss says it was, or whether it constituted negligence, as Rader claims, were questions for the jury.

We find no reversible error in the rulings of the court on the other instructions granted or refused.

"Plaintiff's Instruction No. 13," on the measure of damages, is lengthy and involved. This is particularly true of the latter portion thereof which undertakes to prescribe a formula by which the jury should fix the damages occasioned by the plaintiff's loss of earning power. While we cannot say that any incorrect element or principle is incorporated therein, it is very doubtful whether the language used tended further to enlighten the jury on the subject which had been properly outlined to them in the first part of the instruction.

For the reasons stated the judgment complained of is reversed and the case is remanded for a new trial.

*Reversed and remanded.*