## Richmond

### John Lerwill, Jr. v. Regent Van & Storage, Inc., Et Al.

November 24, 1976.

Record No. 751269.

Present, All the Justices.

*George H. Gray (Outland, Gray, O'Keefe & Hubbard,* on brief), for plaintiff in error.

*Henry C. Morgan, Jr. (Pender, Coward, Addison & Morgan,* on brief), for defendants in error.

Harman, J., delivered the opinion of the court.

This is an appeal from a final order entering judgment for Regent Van & Storage, Inc. and Langhorn Badgett (defendants) on a jury verdict in their favor in a personal injury action by the plaintiff, John Lerwill, Jr. (Lerwill or plaintiff). Plaintiff's principal assignments of error are directed to the granting and refusing of instructions.

The plaintiff, who was then a petty officer in the United States Navy, was severely and permanently injured at

approximately 5:35 P.M. on December 20, 1973, when the car he was driving collided with the rear of a furniture van operated by Langhorn Badgett (Badgett). The truck was owned by Regent Van & Storage, Inc. (Regent). Prior to the crash, both vehicles had traveled westwardly on Shore Drive, a four lane highway with a grass median strip separating the two eastbound lanes from the two westbound lanes. The posted speed limit on the highway was 45 miles per hour. The weather was cloudy and the lights on both vehicles were burning because of darkness. Prior to the crash, each of the vehicles had been proceeding in the left (inside) westbound traffic lane.

Badgett's destination was an apartment complex on the south side of Shore Drive. To get into the development, it was necessary for Badgett to turn left from the westbound lane of Shore Drive, pass through a crossover in the median, and then to cross the eastbound lanes of Shore Drive.

Badgett testified, without contradiction, that he signaled for a left turn as he drove down the inside lane approaching the crossover. After entering the crossover at about a 45° angle, he stopped to await approaching eastbound traffic on Shore Drive. Badgett said he attempted to stop as near as possible to the eastbound lanes without impeding traffic in those lanes. While in this position, the right rear corner of his truck, which extended into the inside westbound lane, was struck by the plaintiff's car.

The plaintiff, who suffered from post traumatic amnesia, testified that he could not recall the crash or anything which occurred after he turned onto Shore Drive approximately two miles east of the crash scene.

The only other eyewitness to the accident, Gary C. King (King), testified that he had driven approximately five to eight car lengths behind plaintiff from the time Lerwill entered Shore Drive until he collided with the truck. Both King and Lerwill drove this distance in the inside westbound lane at a speed of approximately 45 miles per hour. As King rounded a slight curve, which other evidence establishes to be between 280 and 340 feet east of the point where the vehicles collided, King observed "... his [Lerwill's] brake lights come on about the same time I [King] saw the lights of the truck." King testified that he then observed Lerwill's car "... slid[e] sideways, [with his] front end going from right to left, and then he made

impact." King, in the meantime, "checked [his] rearview mirror and went into the right lane and then eventually onto the shoulder." King testified he was still approximately 10 feet east of the rearmost portion of the truck when he stopped on the shoulder of the road.

When asked to describe intensity of the lights on the truck, King responded: "I would say about the middle between bright and dim. They weren't too bright, they weren't too dim." King corroborated Badgett's testimony that eastbound traffic on Shore Drive required Badgett to stop. King verified that the truck "was about as far as it could go. I looked later. It was in as far as it could go without interfering with oncoming traffic."

The accident was investigated by Detective L. D. Fox (Fox or the detective) of the Virginia Beach Police Department, who was assigned to the Traffic Bureau of that department on the date the accident occurred. When Fox arrived at the scene shortly after the crash the two vehicles had not been moved from where they came to rest after the collision. The blinking left turn signal lights on the truck were in operation. He found that the "rear portion" of the truck "had a deposit of film, not clogged up with dirt, . . . [a]nd this [film] was also on the rear lights of that truck, and they [the lights] appeared dimmer to [him] than [the lights on] other vehicles."

The detective testified that the road at the accident scene was straight and level from the point of impact to a slight curve which was "somewhere between" 280 and 340 feet east of the crash site. While the weather was cloudy and darkness had descended, the blacktop road surface was dry and it was free of defects and loose material.

Fox measured the width of the median strip and found it to be 29 feet two inches. He observed that the truck, which was 33 feet long, projected four feet and three inches into the inside westbound traffic lane. The front of the truck, which was sitting at an angle to the crossover, was four feet and six inches north of a prolongation of the northern edge of the pavement of the inside eastbound lane of Shore Drive.

Detective Fox found 42 feet of skid marks leading to the front wheels and 84 feet of skid marks leading to the rear wheels of Lerwill's car. The marks leading to the rear wheels "slant[ed] slightly to the right of the vehicle as though it were going to

change lanes . . . [a]nd the front tire [skid marks] show a more definite skid toward the right."

Plaintiff argues that the trial court erred in refusing his Instructions A and D. Instruction D reads as follows:

"The Court instructs the jury that:

"The driver of the moving van owed the duty to exercise reasonable care under the existing circumstances not to obstruct the highway in such a manner as to be a source of. potential danger to the traveling public.

"And if you believe from a preponderance of the evidence that the driver of the moving van failed to exercise reasonable care in the performance of the foregoing duty, then he was negligent; and if you further believe from such evidence that any such negligence was the sole proximate cause of the accident, then you shall return your verdict in favor of the plaintiff."

Instruction A instructed the jury that:

"It was the duty of the defendants not to stop their moving van on the highway in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown.

"And if you believe from a preponderance of the evidence that the defendants violated the foregoing duty, then they were negligent, and if you further believe from such evidence that any such negligence was the sole proximate cause of the accident, then you shall return your verdict in favor of the plaintiff."

Lerwill also says that the court erred in granting Instruction 8 tendered by the defendants which told the jury:

"The Court instructs the jury that the defendants owed a duty to exercise reasonable care under all of the circumstances existing not to stop their vehicle in such a manner as to be a source of potential danger to the travelling public, however the defendants were entitled to stop their vehicle momentarily for approaching traffic so long as they exercised reasonable care in the manner in which the vehicle was stopped."

We find no error in these rulings of the trial court. While Instruction A attempts to set forth the common law rule that it is a crime to obstruct a public highway, *Moore* v. *Virginia Transit Co.*, 188 Va. 493, 500, 50 S.E.2d 268, 272 (1948), and Instruction D attempts to set forth the statutory duty of a driver not to stop his vehicle in such a manner as to impede and render dangerous the use of the highway by others, Code § 46.1-248, neither of those rules is applicable to this case, where the uncontroverted evidence shows that Badgett, in turning left, momentarily stopped his truck to avoid a collision with oncoming eastbound traffic. *Doss* v. *Rader*, 187 Va. 231, 239, 46 S.E.2d 434, 438 (1948). The trial court, therefore, was correct in refusing to grant Instructions A and D and was correct in granting Instruction 8 which set forth the *Doss* rule.

█ Next we consider the plaintiff's claim that the court erred in granting Instruction 15, which reads as follows:

"The Court instructs the jury that the law does not undertake to apportion or balance the negligence of the parties to a lawsuit where both the plaintiff and defendant are at fault in order to determine which is most at fault. The plaintiff may not recover from the defendants if he was guilty of any degree of negligence which proximately caused or contributed to cause the collision.

"Accordingly, even if you believe from a preponderance of the evidence that the defendants were negligent, and that their negligence proximately contributed to cause the collision, if you further believe from the evidence that the plaintiff was also negligent and that his negligence proximately contributed to cause the collision, then you must return your verdict for the defendants."

The plaintiff argues that the words "of any degree" in the second sentence of this instruction held the plaintiff "to a higher degree of care" than ordinary care and would require "perfection" of the plaintiff. In support of this argument, the plaintiff relies on *Cooke* v. *Griggs*, 183 Va. 851, 33 S.E.2d 764 (1945), *Yeary* v. *Holbrook*, 171 Va. 266, 198 S.E. 441 (1938), *Wright* v. *Perry*, 166 Va. 222, 184 S.E. 206 (1936), and *Clinchfield Coal Corp.* v. *Osborne*, 114 Va. 13, 75 S.E. 750 (1912).

In *Clinchfield*, where the jury was otherwise fully instructed, we held that the trial court did not err in refusing to instruct the

jury that the plaintiff was not entitled to recover if the plaintiff's negligence contributed "in the slightest degree" to cause the accident. In *Wright,* where the trial court struck the words "however slight" from a contributory negligence instruction, we found no error. Likewise, in *Yeary,* where the tendered instruction told the jury that the plaintiff was not entitled to recover if the jury believed that the plaintiff failed to exercise due care "in any particular" if such failure proximately contributed to the accident "in any degree," we held that the trial court did not err in requiring the word "substantial" to be inserted before the word "degree".

In *Cooke* we found that the trial court properly eliminated the words "in any extent" as measuring the quantum of contributory negligence which will bar a recovery. There we pointed out that contributory negligence as a defense must be more than merely trivial; it must be a contributing cause of the accident, 183 Va. at 856-57, 33 S.E.2d at 766.

The common theme running through all those cases is pointed up in *Clinchfield* where our court, speaking through Judge Harrison, pointed out: "The language 'slightest degree' is a departure from that heretofore approved by this court, and should not have been used. It was calculated to mislead and to visit upon the person injured all the consequences of the defendant's negligence, although the shortcomings of the plaintiff may have been so trivial as to have really been without appreciable effect." 114 Va. at 17, 75 S.E. at 751.

Later, in *Voight* v. *Reber,* 187 Va. 157, 46 S.E.2d 15 (1948), we approved an instruction which, after setting forth certain specific duties, told the jury that the plaintiff was entitled to recover if the defendant "failed in his duty in any particular set forth" and that such failure was the sole proximate cause of the accident. There, we held that "there is little chance that the jury could have understood the phrase to refer other than to the failure of the defendant in any of those particulars. It was not equivalent to telling the jury that the defendant was liable for negligence 'in the slightest degree' which was disapproved in *Yeary* v. *Holbrook . . .*" 187 Va. at 164-65, 46 S.E.2d at 19.

Here, in addition to Instruction 15, the court also gave Instruction 9, which defined proximate cause, and Instruction 3 dealing with the defendant's burden of proving contributory negligence. Instruction 9 read:

"The court instructs the jury that"

"As used in these instructions, proximate cause is that cause without which the accident would not have occurred."

Instruction 3 told the jury:

"Where the defendants rely upon contributory negligence of the plaintiff as a defense, such contributory negligence is not presumed but the burden is upon the defendants to prove by a preponderance of the evidence that the plaintiff was guilty of such negligence and that any such negligence proximately contributed to cause the accident; and unless the defendants thus prove the existence of such negligence or unless any such negligence appears from the plaintiff's own evidence or can be fairly inferred from all the circumstances of the case, then you cannot find the plaintiff guilty of contributory negligence.

"And if the jury are uncertain as to whether the plaintiff was guilty of contributory negligence, or if you believe that it is just as probable that the plaintiff was not guilty of any such negligence as it is that he was, then you cannot find the plaintiff guilty of contributory negligence."

Although we disapprove the use of the words "in any degree" in Instruction 15, when the instructions are read as a whole, we find that the jury was fully and fairly instructed that the defendants, to bar plaintiff's recovery on the grounds of contributory negligence, had the burden of proving that the plaintiff's negligence was substantial and such that without it the accident would not have occurred.

We have reviewed the other assignments of error about which Lerwill complains and find no reversible error.

For these reasons, the judgment of the trial court is affirmed.

*Affirmed.*