## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Myrtle Brigham

v.

Barbara A. Blackwell

December 12, 1985

By JUDGE VANCE M. FRY

The plaintiff alleges she was injured on April 1, 1983, when her automobile was struck in the rear while stopped for a traffic light by an automobile operated by the defendant. The plaintiff's vehicle was not damaged and the defendant's vehicle received damage to the front grill and the windshield was shattered.

Following the collision, the plaintiff was taken by ambulance to the Mary Washington Hospital, treated and released that day. The plaintiff testified that because of pain developing in her neck and arm she went to see Dr. Barrera, a general practitioner, on April 4 and again on April 8. A neck collar was prescribed. The plaintiff was referred to Dr. Ward, an orthopedist and was seen by him on April 11, twice on June 8, and on July 15, 29, 30 and 31. Dr. Ward referred her to Dr. Kim, a neurologist, and was seen by him on June 15. Dr. Kim had her admitted to the Potomac Hospital for tests. She was later seen by Dr. Rowady, and admitted to the same hospital for a myelogram on or about July 29. She was in the hospital for 6 days, having had a reaction to the aforesaid test. She was then seen again by Dr. Barrera, the general practitioner, on August 12.

Without objection, the plaintiff submitted the following medical bills:

| | |
|---|---:|
| Mary Washington Hospital | $143.60 |
| Dr. Barrera | 75.00 |
| Dr. Ward | 395.00 |
| Dr. Kim | 50.00 |
| Dr. Rowady | 542.00 |
| Potomac Hospital | 1,796.35 |

The plaintiff testified because of pain and discomfort in her neck, upper back, right arm, and later extending into her lower back, she lost 43 days' wages totalling $2600. The plaintiff further testified that because of the pain and discomfort she was prevented from pursuing her normal life, unable to do her housework, garden work, shopping, jogging, dancing, and other activities detailed in her testimony. She further testified that she has continued to suffer and continued to be disabled, and that it has gotten worse rather than better. Two of her daughters and her daughter-in-law testified in the plaintiff's behalf as to her pain, discomfort and disability.

Dr. Ward's testimony was presented by deposition. No evidence was presented from the Mary Washington Hospital, Dr. Barrera, Dr. Kim, Dr. Rowady, or the Potomac Hospital.

At the beginning of the trial, the defendant, by counsel, admitted liability but denied that the plaintiff suffered any injuries resulting from the accident.

The jury, after deliberating one hour and forty-five minutes, returned a verdict for the plaintiff in the amount of $611.95.

The plaintiff moved the court to set aside the verdict as being contrary to the evidence and as being inadequate. The matter is now before the court on that motion. The plaintiff's letter memorandum in support of her motion has been received and reviewed as has the reply letter memorandum by the defendant.

The issue presented by the motion is what injuries did the plaintiff receive in this accident, what medical treatment and expenses were necessitated therefor, and what disablement was attendant thereupon.

The jury is the judge of the credibility of the witnesses and may give to their testimony such weight as it deems proper except that it cannot arbitrarily disregard the credible testimony of any witness. The jury is to determine whether the plaintiff has carried

the burden of proving her case by the greater weight of the evidence, unless the court can conclude as a matter of law that she has done so.

A trial court cannot set aside a jury verdict where there is credible evidence to support it. The fact that the trial court might have reached a different conclusion if trying the case without a jury does not afford grounds to set aside a verdict. The trial court cannot substitute its judgment for that of the jury. If there is a conflict on material evidence over which reasonable men may disagree, then the trial court cannot set the verdict aside. See numerous cases cited in the annotation to Section 8.01-430 of the 1950 Code of Virginia, as amended.

The plaintiff relies upon the case of *Rome* v. *Kelly Springfield*, 217 Va. 493 (1977), to support her contention that the verdict should be set aside on the ground that the jury failed to follow the court's instruction upon damages and that its verdict was therefore contrary to the law. The defendant relies upon the case of *Doe* v. *West*, 222 Va. 440 (1981), to support her contention that the verdict is proper. Both cases have been read and thoroughly reviewed.

It is clear that the jury failed to give effect to all of the provisions of the instruction on damages *unless* the jury refused (a) to credit in whole or in part the testimony of the plaintiff and her witnesses and/or (b) concluded that the complaints of the plaintiff, the medical expenses incurred, and the loss of wages were largely related to and caused by the pre-existing physical health and condition of the plaintiff, or that, alternatively, the plaintiff failed to prove by the greater weight of the evidence that they were not.

To determine if the jury erred in its determination, it is necessary to review the evidence, affirmative or negative, to judge whether it or the reasonable inference to be drawn from it, or lack of it, are sufficient to support the verdict.

1. The plaintiff conceded she had sustained an injury to her neck and shoulder some years prior.

2. The plaintiff denied that she was caused to or did wear a neck collar prior to the accident on April 1, 1983. Her daughter-in-law testified that the plaintiff wore a neck collar on occasions both prior to and after the accident herein complained of.

3. The plaintiff denied that she had told Dr. Ward that she had a 5-year history of intermittent neck pain or that it was associated with numbness or tingling in her arms. Dr. Ward testified, by deposition, as follows:

Q. The 5-year history of intermittent neck pain was also associated with numbness or tingling in her arms, wasn't it?

A. That is correct.

Q. Apparently that had been going on-off and on for a period of 5 years before you saw her?

A. According to my history, yes.

Q. Presumably off and on for a period of 5 years before this accident?

A. Yes.

4. The plaintiff testified that her health had been good prior to the accident and that she had not missed work because of illness. Upon cross-examination, she conceded she had taken 14 days sick leave in the year preceding the accident although she received only 13 days sick leave annually. She further testified by way of explanation that she took the sick leave even though she was not sick, and that everyone in the government did this. When asked if she did not lie about her reason for not working those days, the plaintiff was hesitant and unresponsive to the question.

5. The plaintiff denied that immediately following the collision, she went back to the defendant's car and told her that she (the plaintiff) was going to sue her (the defendant) for every cent she had. The defendant testified that the plaintiff did make such a statement.

6. The plaintiff testified that following the collision on April 1, 1983, she continued to get worse rather than improve and that she is now worse than before.

7. The plaintiff testified that following the last hospital stay (six days) and tests there performed, Dr. Ward did not call her to come in to discuss the results of the tests or the evaluation of them. Dr. Ward testified as follows:

Q. I want to refer to your report of April 4, 1983. . . You concluded that "the patient was lost to follow-up, although several phone conversations were held with the patient advising her she should return for further evaluation." Did your report say that?

A. Yes, it did.

Q. What does that mean?

A. I would assume I did talk to her and ask her to come in for evaluation because of the presence of the carpal tunnel syndrome, had been diagnosed at the time of the original hospitalization.

8. The plaintiff never returned to see Dr. Ward following her last hospital period.

9. The plaintiff never sought from Dr. Ward any pain medication after July 1983. There is no evidence that she sought any such medication from anyone.

10. Dr. Ward testified that there was no way he could tell whether the plaintiff's discomfort was any greater after the accident than it was before.

11. Dr. Ward testified that it was possible for a person to have a carpal tunnel syndrome without being aware of it, but that tingling and night pain are the primary symptom of this condition and that the plaintiff told him that she had the tingling sensation prior to the accident.

12. Dr. Ward testified that X-rays taken of the plaintiff's neck area were "consistent with the plaintiff's age and a previous history of injury of long standing, that the prior history of neck pain was consistent with the spurring and degenerative condition shown in the X-ray."

13. Dr. Ward testified as follows:

Q. What was your diagnosis when you last saw her?

A. It was felt that she was suffering from a chronic sprain of the cervical spine, superim-

posed or (sic) cervical spondylosis, again degenerative disease of the neck. She was suffering from carpal tunnel syndrome and lumbar spondylosis, which are degenerative changes in the lower back.

Q. Now you concluded clearly that the carpal tunnel syndrome was totally unrelated to the accident, is that right?

A. It was definitely pre-existing from her history and the findings in the examination.

Q. And because so much time had passed from the accident until the time she complained of lower back pain, you were uncertain as to whether the lower back pain was related to the accident, weren't you?

A. It was uncertain.

Q. As far as the neck is concerned you found that there was clearly a prior problem that *might* have been aggravated by the accident? (italics added)

A. Yes.

It will be noted that the foregoing evidence discussed and/or testimony quoted in numbered paragraphs 1 through 13, all militate against the plaintiff and her claims. However, the issue that we are here concerned with is whether there is evidence to support the jury's verdict. For this reason it has been necessary to review that portion of the evidence and all inferences that may reasonably be drawn therefrom that tend to do so.

The contradictions of the plaintiff's statements under oath on the witness stand set forth in paragraphs 2, 3, 5 and 7, and her questionable manner of dealing with her sick leave set forth in paragraph 4, afforded the jury a basis for discrediting much of the plaintiff's testimony if they believed the impeaching testimony.

Further, the plaintiff's prior injury and complaints coupled with the inability of Dr. Ward, the plaintiff's own and only medical witness and/or medical evidence,

to conclude with any probability, medical or otherwise, that the plaintiff's complaints and condition resulted from or were aggravated by the accident on April 1, 1983, all as set forth in paragraphs 1, 4, 10, 11, 12 and 13, would easily support a finding that the plaintiff had failed to prove by the greater weight of the evidence that her complaints, discomfort, and disability were caused by or aggravated by the accident in question. The plaintiff's statement and conduct set forth in paragraph 6, 8 and 9, if true, would lend support to such a conclusion. And if the jury did so conclude, then a finding that the plaintiff's medical expenses, beyond the emergency room treatment at the Mary Washington Hospital, the 2 office visits to the local practitioner and the first 2 or 3 office visits to Dr. Ward, were not for treatment of injuries sustained in the accident but were diagnostic studies related to lumbar spondylosis, carpal tunnel syndrome, and spurring and degenerative condition of the cervical spine, all pre-existing, and not aggravated by, the collision complained of.

It is the court's opinion that there were sufficient evidence, the credibility and weight of which was for the jury, to support the verdict that was rendered.

At the commencement of the trial, the jury was orally instructed that the defendant conceded liability, but the burden was upon the plaintiff to prove her injuries and damages, if any.

At the conclusion of the evidence, written instructions were read to the jury including two forms of verdict. The jury was orally instructed that there were two possible verdicts, one for the plaintiff and one for the defendant. The jury was further orally instructed that the defendant had conceded liability but not damages, and that if they found the plaintiff had been damaged they should use that form that provided for damages and fill in the amount; and further, if they found that the plaintiff sustained no injuries or damages, they should use that form that was a verdict for the defendant.

The plaintiff complains that in view of the admitted liability it was error to instruct the jury that a verdict could be returned for the defendant. There is no merit to this contention. To tell the jury that if they find the plaintiff has sustained no damages is to tell them to return a verdict for the defendant. To argue otherwise is merely to argue a question of semantics. Indeed, to

give only the one form of verdict telling the jury to return a verdict for the plaintiff and concluding with the language "and fix her damages at $ --- ", as contended for by the plaintiff, would be prejudicial to the defendant as the jury could infer that the court was telling it that they had to fix *some* damages. It was quite clear that the court's oral instructions and explanations overcame any shortcomings in submitting the two forms of verdict. Furthermore, if it be conceded, arguendo, that there is merit to the plaintiff's contention, it is difficult to perceive the plaintiff's prejudice since the jury did not return a verdict for the defendant but *did* return a verdict for the plaintiff fully consistent with one view of the evidence. Whether this view would have been that of the trial court sitting alone is not relevant. As hereinabove concluded, there was evidence to support the jury's verdict, and it must therefore stand.

Mr. Roberts will prepare the decree overruling the plaintiff's motions and entering judgment for the plaintiff in accordance with the verdict.