UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chafin and Malveaux
Argued at Norfolk, Virginia

HOWARD ODELL HARROD, III

MEMORANDUM OPINION* BY
v.     Record No. 1297-16-1     JUDGE RANDOLPH A. BEALES
AUGUST 8, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Jessica E. B. Crossett, Deputy Public Defender (Robert Moody, IV,
Chief Deputy Public Defender, on brief), for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


On August 1, 2016, Howard Odell Harrod, III ("appellant") entered a conditional guilty

plea to felony possession with intent to distribute marijuana (more than a half ounce and less

than five pounds) in violation of Code § 18.2-248.1. Appellant appeals the trial court's denial of

his motion to suppress evidence found in a rental vehicle that appellant was driving on the

grounds that the evidence was seized as the result of an unlawful stop. Specifically, appellant

argues that the initial traffic stop was not supported by reasonable articulable suspicion and that

"the traffic stop was unlawfully prolonged and became a separate criminal investigation."

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth as

we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

So viewed, the evidence at appellant's suppression hearing showed that, on July 26, 2015, Officer Brendon Walzak of the Newport News Police Department was on patrol in a marked police car traveling southbound on Roanoke Avenue. As he approached the corner of Roanoke Avenue and 16th Street, Officer Walzak came to a stop at a red stop sign. As he was stopping, Officer Walzak observed an individual traveling eastbound on 16th Street. Officer Walzak observed the individual (appellant) stop his vehicle in the road at an intersection even though appellant did not have a sign requiring him to stop or slow down. Officer Walzak testified that he was "forced to wait longer at the stop sign" because he did not have the right-of-way. Officer Walzak said he was also prevented "from turning left or going straight" by appellant's actions. Officer Walzak further testified that this was a "high-traveled area."

Officer Walzak then conducted a traffic stop. Officer Walzak walked up to the stopped vehicle. He informed appellant that appellant had stopped the vehicle in the road when he was not supposed to stop. Officer Walzak asked appellant if he was all right, and then asked, "You got your license on you?" Appellant provided Officer Walzak with his license, and Officer Walzak then returned to his police car. Officer Walzak immediately began typing appellant's information into his computer system. As Officer Walzak was performing that task, he requested police backup. While he was still working on his computer to get appellant's driver's information, Officer Walzak stated that he made another call and asked whether a narcotics canine was on duty. Officer Walzak testified that he was still working on investigating the traffic stop while he made the call for backup and while he asked if there was a canine officer available. The trial court found that the phone calls did not delay the stop. A short time after making those calls, Officer Walzak called dispatch and provided the dispatcher with appellant's

information.  After hearing back from the dispatcher, Officer Walzak then got out of the car, walked back to appellant, and asked appellant about his license.  Appellant admitted that he knew his license was revoked.  Officer Walzak and appellant had a short conversation about why appellant's license had been revoked and about whether there was anything illegal or dangerous in the vehicle (appellant said there was not).  Officer Walzak then walked back to his police car as two backup police officers arrived.  The officers briefly spoke with each other,[1] and then Officer Walzak went back to his car to start the paperwork for charging appellant with driving on a revoked license.  Officer Walzak dealt with his paperwork until he observed appellant then standing outside of appellant's car being put in handcuffs.  At that point, Officer Walzak exited his vehicle and approached the other officers and appellant.  The encounter – from the time Officer Walzak observed appellant stop while driving to the time appellant was placed in handcuffs – lasted approximately sixteen minutes.

Officer Walzak never completed a summons for improperly stopping on a highway.  At some point, Officer Walzak did complete a summons for driving with a revoked license, but that summons was never given to appellant because Officer Walzak became distracted by the subsequent narcotics investigation.  Officers Hunt and Jessie (the backup officers) questioned appellant, while Officer Walzak was preparing a summons, until they concluded that they had probable cause to search appellant's vehicle.  One officer informed Officer Walzak that, when appellant opened his glove compartment to retrieve the rental agreement for the vehicle, the officer observed a scale.  The officers had appellant exit his vehicle and then they searched the

---

[1] Officer Walzak summarized what had taken place before the other officers arrived, such as explaining that appellant was driving on a revoked license.  The backup officers indicated that they would ask appellant for consent to search his vehicle and also ask him for his rental agreement.  (According to one officer, rental agreements will sometimes say "Tow car please" when the driver of a rental car is arrested).

vehicle. Officers recovered marijuana, cash, and a scale.[2] The trial court admitted into evidence video footage of the events recorded by a camera that Officer Walzak wore on him.

The trial court found that appellant's stopping of his vehicle could have impeded traffic, that Officer Walzak's initial traffic stop was supported by reasonable articulable suspicion, and that the traffic stop was not prolonged beyond what was required.

## II. ANALYSIS

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them . . . ." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

### A. *Reasonable Articulable Suspicion for the Initial Traffic Stop*

Appellant "does not contest the search [of appellant's rental vehicle], only the traffic stop and detention beyond what was necessary to complete the traffic stop." Opening Br. at 5 n.1. Appellant argues, "The stop at issue was unsupported by reasonable suspicion that a traffic or equipment violation had occurred and was instead clearly a pretext to conduct a criminal investigation against Harrod." At trial, the Commonwealth justified the initial stop by relying on

---

[2] The three plastic bags of what appeared to be marijuana were sent to the lab for testing. Each bag was analyzed separately and found to contain marijuana. In total, the bags weighed roughly 63.23 grams (2.230 ounces).

Code § 46.2-888 and arguing that the police did have reasonable suspicion to conclude that appellant had "stop[ped] a vehicle in such manner as to impede or render dangerous the use of the highway by others." Code § 46.2-888 reads in pertinent part, "No person shall stop a vehicle in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency, an accident, or a mechanical breakdown."

"An investigative stop constitutes a seizure within the meaning of the Fourth Amendment." Mason v. Commonwealth, 291 Va. 362, 367-68, 786 S.E.2d 148, 151 (2016). "[T]o justify this type of seizure, officers need only 'reasonable suspicion'— that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." Id. Appellant argues that he should not have been punished for "pausing momentarily" and that such an interpretation of Code § 46.2-888 would result in police having an almost unrestricted ability to pull over cautious motorists. Appellant notes that the Supreme Court of Virginia has recognized that Code § 46.2-888 "was not designed to prevent a motorist from stopping momentarily on the highway in an emergency or in order to avoid a collision . . . [s]topping momentarily is frequently a necessary incident to travel on the highway." Doss v. Rader, 187 Va. 231, 238, 46 S.E.2d 434, 438 (1948). However, all of these arguments are more applicable to the ultimate question of whether appellant had, in fact, violated Code § 46.2-888.

Whether the officer had reasonable articulable suspicion to stop appellant for an alleged violation of Code § 46.2-888 requires more than a mere hunch but less than proof of wrongdoing by a preponderance of the evidence. Commonwealth v. Thomas, 23 Va. App. 598, 610, 478 S.E.2d 715, 721 (1996). In this case, the trial court found that appellant stopped his car in the road. There was no requirement for appellant to stop or slow down at that point. Officer Walzak testified that his travel was impeded by appellant's stop. Consequently, given the evidence at

trial, we hold that the trial court did not err in finding that Officer Walzak had reasonable articulable suspicion to stop appellant for violating Code § 46.2-888.

### B. *Scope of the Traffic Stop*

Even though the initial traffic stop was supported by reasonable articulable suspicion, we must consider whether the police exceeded the scope of the stop in this case. Police traffic encounters must be limited in duration to what is necessary to effectuate a proper stop because "[a] traffic stop constitutes a 'seizure' under the Fourth Amendment and is subject to review for reasonableness." United States v. Hill, 852 F.3d 377, 381 (4th Cir. 2017).

> Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose."

Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) (internal citations omitted).

Appellant argues that Matthews v. Commonwealth, 65 Va. App. 334, 778 S.E.2d 122 (2015), and Rodriguez make it clear that there is no tolerance even for a "*de minimis*" delay and that the stop *was* prolonged by Officer Walzak's actions. While it is undisputed that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed," Rodriguez, 135 S. Ct. at 1614, the Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention. See Arizona v. Johnson, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

Upon returning to his police cruiser, Officer Walzak first began typing appellant's driver's information into his computer system. As Officer Walzak was performing that task, he simultaneously requested police backup. While he was still working on his computer to retrieve

appellant's information, Officer Walzak made another call and asked whether a narcotics canine was on duty. Officer Walzak specifically testified that he was still working on investigating the traffic stop while he made the call for backup. Having backup officers present can be very important – and indeed absolutely necessary – for officer safety during traffic stops. See Pennsylvania v. Mimms, 434 U.S. 106 (1977) (placing importance on officer safety during searches and seizures as a result of a traffic violation). As the United States Supreme Court has stated:

> We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops."

Id. at 110 (first quoting Terry v. Ohio, 392 U.S. 1, 23 (1969); then quoting Adams v. Williams, 407 U.S. 143, 148 n.3 (1972); and then quoting United States v. Robinson, 414 U.S. 218, 234 (1973)). Thus, we conclude that Officer Walzak's request for backup while investigating the traffic stop was related to officer safety concerns and was, therefore, part of "the seizure's 'mission.'" Rodriguez, 135 S. Ct. at 1614.

Appellant also took issue with Officer Walzak's request for a canine officer. Officer Walzak testified that he was still working on investigating the traffic stop while he asked if there was a canine officer available. "While diligently pursuing the purpose of a traffic stop, officers also may engage in other investigative techniques unrelated to the underlying traffic infraction or

the safety of the officers." United States v. Hill, 852 F.3d 377, 382 (4th Cir. 2017) (citing Rodriguez, 135 S. Ct. at 1614-15). "Such unrelated activity is permitted under the Fourth Amendment only as long as that activity does not prolong the roadside detention for the traffic infraction." Id. The trial court never made any factual findings that would support the conclusion that Officer Walzak *was not* acting diligently in pursuing the purpose of the stop.

In Matthews v. Commonwealth, this Court found that a request for a canine unit, along with asking the suspect unrelated questions during the course of a routine traffic stop, impermissibly extended the stop. 65 Va. App. at 345, 778 S.E.2d at 128. However, Matthews is distinguishable from the situation before us because, in this case, Officer Walzak called for the canine unit *while* he was retrieving appellant's information. The circuit court found that Officer Walzak's call for the canine unit "doesn't delay anything." Thus, given this finding by the trial court and given the holdings in Rodriguez and Hill, we hold that Officer Walzak's act of calling for a canine unit – while simultaneously working on his traffic stop paperwork – did not "measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009).

Appellant further argues that the backup officers – who were speaking with appellant while Officer Walzak prepared the summons and paperwork regarding appellant's alleged driving on a revoked license – were conducting an "unrelated criminal investigation" that unlawfully prolonged the stop. The record indicates that the officers planned to ask appellant for consent to search his vehicle and to ask appellant for a copy of his car rental agreement. The video clearly shows the other two officers speaking with appellant while Officer Walzak was back in his vehicle, diligently filling out a summons and various other paperwork until Officer Walzak observed appellant being handcuffed. To the extent that the other officers' questioning

of appellant was unrelated to the alleged crime of driving on a revoked license,[3] such questioning is actually of no consequence to determining whether the investigation was unlawfully prolonged in this particular case because the other officers' questioning took place *at the same time* Officer Walzak was in his police car retrieving appellant's information and working on a summons.[4]

Therefore, the other officers did not prolong the duration of the stop in any way as a result of their investigation into the presence of illegal drugs because Officer Walzak was concurrently engaged in the act of writing a summons for appellant for the alleged violation of driving with a revoked license.

### III. CONCLUSION

In summary, we hold that the trial court did not err in finding that Officer Walzak had reasonable articulable suspicion to stop appellant for an alleged violation of Code § 46.2-888 because he saw appellant stop his vehicle in the road in a way that the trial judge concluded could have impeded traffic. Once Officer Walzak had stopped appellant and learned that appellant was driving on a revoked license, that fact changed the nature of the stop and Officer Walzak was entitled to continue writing a new summons for driving on a revoked license while the other officers spoke with appellant. In addition, the other officers in no way prolonged the duration of the stop by their speaking with appellant – during which they developed probable cause that appellant possessed marijuana – while Officer Walzak was busy working on paperwork related to charging appellant with driving on a revoked license. Therefore, we affirm

---

[3] Driving on a revoked license is a Class 1 misdemeanor in Virginia. <u>See</u> Code § 46.2-301.

[4] Because appellant "does not contest the search [of appellant's rental vehicle], only the traffic stop and detention beyond what was necessary to complete the traffic stop[,]" Opening Br. at 5 n.1, we assume that, by the time the other officers removed appellant from his rental car to search the car, the officers possessed probable cause to search it.

appellant's conviction for possession with intent to distribute marijuana (more than a half ounce and less than five pounds) in violation of Code § 18.2-248.1.

<u>Affirmed.</u>
